**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Matthew BURNETTE, Respondent.**

**No. 88SC2.**

Supreme Court of Colorado,
En Banc.

June 26, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Paul H. Chan, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colorado State Public Defender, and Janet Fullmer Youtz, Deputy State Public Defender, Denver, for respondent.

LOHR, Justice.

In *People v. Burnette*, 753 P.2d 773 (Colo.App.1987), the Colorado Court of Appeals reversed the conviction of defendant Matthew Burnette for second degree assault. The court of appeals concluded that the district court violated Crim.P. 24(e) when it permitted the substitution of an alternate juror for a regular juror who had become unavailable after jury deliberations had begun. *See also* § 16–10–105, 8A C.R.S. (1986). This violation, the court of appeals held, gave rise to a rebuttable presumption of prejudice to the defendant. Because the trial judge failed to take appropriate precautionary steps to ensure against prejudice to the defendant as a result of the replacement, the court of appeals held that the presumption of prejudice was not overcome. Therefore, the violation required reversal of the judgment of conviction. The People sought certiorari, contending that the court of appeals improperly presumed that the violation of the rule prejudiced the rights of the defendant. We granted certiorari to review this question. We now hold that a violation of Crim.P. 24(e) by the replacement of a regular juror with an alternate juror during deliberations raises a presumption of prejudice that, if not properly rebutted, requires reversal of any conviction obtained as a result of a verdict rendered by the improp-

erly constituted jury. We therefore affirm the judgment of the court of appeals.

## I.

On January 1, 1986, the defendant, Matthew Burnette, was involved in an altercation in which he stabbed his brother-in-law with a knife. Burnette was charged in the El Paso County District Court with one count of assault in the first degree, § 18–3–202, 8B C.R.S. (1986). Burnette entered a plea of not guilty and stood trial before a jury composed of twelve regular members and one alternate. The trial began on March 31, 1986, and closing arguments were completed on the afternoon of April 2, 1986. The trial court then submitted the matter to the jury for deliberations. After determining that all the regular jurors were prepared to enter into deliberations, the trial court told the alternate juror: "You served to protect us from an alternative which has not come about, so we will excuse you at this time with our thanks." The court then admonished the alternate, "I will tell you, however, that you are not to discuss your view of the case, and what your vote on the verdict might be, with anyone until the jury has, in fact, reached a verdict, because it may still be necessary to call upon you. But you are excused...."

The twelve regular jurors then retired to deliberate. After deliberating for approximately four and one-half hours, they were excused to return at 9:00 a.m. on the following day, April 3. During the night, a severe snowstorm moved into the county in which the courthouse was located. Early the next morning, one of the jurors called the court to say that she could not come to the courthouse due to the inclement weather. The court's bailiff confirmed through the county sheriff that the weather was severe enough to prevent the juror from traveling to the courthouse.

At approximately 10:00 a.m., the court conferred with counsel to consider how best to proceed. During that meeting, defense counsel refused to stipulate to a jury of fewer than twelve members. Over defense counsel's objection, the court then decided to recall the alternate juror. After the alternate juror arrived and before jury deliberations had begun, the court received a directive from the chief judge of the district ordering the courthouse closed at 12:00 noon due to the storm. Shortly after 11:15 a.m., the court brought the eleven jurors and the alternate into the courtroom and advised them that the alternate juror would be substituted for the regular juror. The court then told the reconstituted jury:

> I am going to invite you to deliberate with Mr. Baxter [the alternate juror] until 12 noon. I will tell you that you must start over from the beginning so that Mr. Baxter has the benefit of whatever might have been discussed yesterday, has the opportunity to contribute to things. Maybe he can point out something that will change your view of the situation. So you may not simply sit around and ask him what his view is, you've got to start over and begin the deliberations again. I will also tell you, unfortunately, because of the weather, we've lost some time already, and having lost the entire afternoon, that it will be [t]he Court's expectation that you will come back tomorrow, unless the weather really gets bad, you know, or unless you resolve it between now and noon. So that's simply the time schedule that we're going to deal with. So the Jury will retire and deliberate upon its verdict, and you may go with the bailiff.

The reconstituted jury deliberated for approximately one-half hour before the court excused them for the day. The jury returned the following morning and sometime during that day reached a verdict of guilty on the charge of second degree assault, § 18–3–203, 8B C.R.S. (1986), a lesser-included offense to the charge of first degree assault. The trial court sentenced Burnette to a four-year probationary term.

Burnette appealed to the Colorado Court of Appeals, arguing that the trial court had erred by allowing the discharged alternate juror to replace the regular juror after the jury had begun its deliberations. The court of appeals held that Crim.P. 24(e) mandates that an alternate juror be dis-

charged when the jury commences deliberations and that the juror cannot thereafter be recalled for service. *See also* § 16–10–105, 8A C.R.S. (1986) (cited by court of appeals but not specifically relied upon in reaching its decision). The court of appeals further held that if a trial court errs by recalling a discharged alternate juror to replace a juror who is unable to continue to serve after deliberations have commenced, it will be presumed that such replacement resulted in prejudice to the defendant and that reversal is therefore required. The court of appeals concluded that in this case the presumption of prejudice had not been overcome because the trial court had failed to adopt sufficient procedural safeguards to ensure against improper influences or other prejudice as a result of the replacement. Specifically, the trial court had made no inquiry of any type into the alternate's activities after his discharge or whether he had been subjected to extrinsic information or other improper influences during that time. Nor did the trial court examine the other jurors to determine whether they could put the previous discussions out of their minds and begin their deliberations anew. The court of appeals therefore reversed the conviction and remanded the case for a new trial.

We granted certiorari to review the court of appeals' conclusion that a rebuttable presumption of prejudice to the rights of the defendant arises as a result of the mid-deliberation substitution of an alternate for a regular juror.

## II.

### A.

The right to a fair trial by an impartial jury is one of the fundamental constitutional rights of a criminal defendant. *See* U.S. Const. amends. VI and XIV; Colo. Const. art. II, §§ 16 and 23; *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968);

*People v. Boulies*, 690 P.2d 1253, 1255 (Colo.1984); *People ex rel. Hunter v. District Court*, 634 P.2d 44, 45 (Colo.1981).[1] However, a defendant's right to a fair and impartial jury does not entitle him to a jury composed of any particular individuals. *People v. Tippett*, 733 P.2d 1183, 1196 (Colo.1987); *People v. Evans*, 674 P.2d 975, 977–78 (Colo.App.1983). When, through unforeseen circumstances, a juror becomes unable to continue to serve before the case is submitted to the jury, the trial court may direct that an alternate replace the regular juror. *People v. Abbott*, 690 P.2d 1263, 1268–69 (Colo.1984).

The procedures to be followed for using alternate jurors are described in Crim.P. 24. Under Crim.P. 24(e), a trial court may direct that "a sufficient number of jurors in addition to the regular jury be called and impaneled to sit as alternate jurors." These alternate jurors are chosen in the same way and have the same qualifications and functions as regular jurors. *Id.* Alternate jurors "replace jurors who, *prior to the time the jury retires to consider its verdict,* become unable or disqualified to perform their duties." *Id.* (emphasis added). "An alternate juror who does not replace a regular juror shall be discharged *at the time the jury retires to consider its verdict." Id.* (emphasis added). Section 16–10–105, 8A C.R.S. (1986), contains language identical to Crim.P. 24(e) in all respects relevant here, including the requirement that the alternate replace a regular juror or be discharged prior to the time that the jury begins its deliberations.

We have previously held that prior to the time that the jury retires to begin its deliberations, section 16–10–105 gives a trial court wide discretion in deciding whether a juror has become unable to continue to serve and therefore must be replaced with an alternate. *Abbott*, 690 P.2d at 1268–69; *see also Evans*, 674 P.2d at 977–78. We have never considered the question of

---

**1.** The United States Supreme Court has characterized as the "essential feature" of a jury

> the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community par-

ticipation and shared responsibility that results from that group's determination of guilt or innocence.

*Williams v. Florida*, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970).

whether a trial court is authorized to replace a regular juror once deliberations have commenced. The language of Crim.P. 24(e), however, is mandatory in its requirement that alternate jurors be discharged at the time the jury retires to deliberate, and any replacement of a regular juror by an alternate must necessarily occur prior to that time.

In the event that after a jury has been sworn to try the case, a regular juror becomes unable to continue until a verdict is reached and "no alternate juror is available to replace such juror, the parties, at any time before verdict, may stipulate in writing or on the record in open court, with approval of the court, that the jury shall consist of any number less than twelve." Crim.P. 23(a)(7); *see also* § 16–10–106, 8A C.R.S. (1986) (containing essentially the same language). The unavailability of an alternate juror after jury deliberations have commenced is foreordained if the requirements of Crim.P..24(e) have been met, for that rule mandates the discharge of alternate jurors when the jury retires to consider its verdict. Nowhere do the rules address the situation in which no alternate juror is available to replace a regular juror who becomes unavailable during deliberations and the parties cannot reach a stipulation to proceed with fewer than twelve jurors.[2] There is no authority in Colorado, however, for a trial court to substitute a previously discharged alternate for a regular juror after deliberations have begun. We agree with the court of appeals that the "clear implication of [Crim.P. 24(e)] is that an alternate juror is available to replace a juror unable to perform the necessary duties of the office only prior to the time the jury retires. Once the jury commences its deliberations, the alternate juror must be discharged and is no longer available for service." *Burnette*, 753 P.2d at 774.

Turning to the facts of the case before us, we conclude that once the jury had retired to deliberate, the trial court was compelled under Crim.P. 24(e) to discharge the alternate juror. The trial court's attempt to keep the alternate "on call" and the substitution of the alternate for the regular juror were contrary to the provisions of Crim.P. 24(e).

### B.

#### 1.

■ Having concluded that the trial court violated Crim.P. 24(e) by recalling the discharged alternate juror, we must determine the legal effect of the verdict of the improperly constituted jury. The People urge that even if recalling an alternate to replace an unavailable juror during deliberations is a technical violation of Crim.P. 24(e), such replacement does not necessarily require reversal. They contend that reversal should result only when the defendant is able to demonstrate that he was prejudiced by the substitution. In the alternative, the People argue that even if the court of appeals was correct in holding that the trial court's violation of Crim.P. 24(e) raises a presumption of prejudice to the rights of the defendant, the trial court employed sufficient procedural protections to guard against any actual prejudice.

The court of appeals held that prejudice will be presumed where a discharged alternate juror replaces a juror who becomes unable to continue during deliberations and that in order to rebut the presumption it must be shown that the trial court adopted sufficient procedural safeguards to ensure against prejudice to the defendant as a result of the replacement. *Burnette*, 753 P.2d at 775. We agree with this conclusion. In our view, although the recall of a discharged alternate to replace a juror who becomes unable to continue during deliber-

**2.** In appropriate circumstances, a defendant may be considered to have waived the prohibition against mid-deliberation juror substitution by stipulating in advance to a mid-deliberation substitution of an alternate. *See, e.g., United States v. Foster,* 711 F.2d 871 (9th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *United States v. Baccari,* 489 F.2d 274 (10th Cir.1973), *cert. denied,* 417 U.S. 914, 94 S.Ct. 2614, 41 L.Ed.2d 218 (1974); *cf. United States v. Reed,* 790 F.2d 208 (2d Cir.1986) (honoring stipulation to allow alternate to participate in deliberations, resulting in verdict by thirteen-person jury), *cert. denied,* 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 393 (1986).

ations raises a presumption of prejudice to the defendant's right to a fair trial, that presumption may be overcome by an adequate showing that procedural precautions taken by the trial court obviated the danger of prejudice to the defendant and overcame the concerns underlying the mandatory requirements of Crim.P. 24(e). However, we agree with the court of appeals that the presumption of prejudice was not overcome under the facts of this case.

## 2.

The potential for prejudice occasioned by a deviation from the mandatory requirements of Crim.P. 24(e) is great. Where an alternate juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant's guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his views and to persuade others. *See United States v. Phillips*, 664 F.2d 971, 995 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Lamb*, 529 F.2d 1153, 1156 (9th Cir.1975). Moreover, the new juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision. *See People v. Ryan*, 19 N.Y.2d 100, 278 N.Y.S.2d 199, 202, 224 N.E.2d 710, 712 (1966). Nor will the new juror have had the benefit of the unavailable juror's views. *Id.* Finally, a lone juror who cannot in good conscience vote for conviction might be under great pressure to feign illness in order to place the burden of deci-

sion on an alternate. *Lamb*, 529 F.2d at 1156.[3]

For reasons such as these, the practice of replacing a juror with an alternate at such a sensitive stage of the proceedings has been disapproved in the ABA Standards for Criminal Justice § 15–2.7 (1986). The commentary to Standard 15–2.7 explains that the approach of allowing alternate jurors to replace regular jurors during deliberations was rejected in the standard because "it is not desirable to allow a juror who is unfamiliar with the prior deliberations to suddenly join the group and participate in the voting without the benefit of earlier group discussion." *See also* 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 388, at 393 (2d ed. 1982) (criticizing the procedure of substituting an alternate for a regular juror during deliberations).

The federal counterpart to Crim.P. 24(e), Fed.R.Crim.P. 24(c),[4] requires that alternate jurors who do not replace regular jurors be discharged after the jury retires to consider its verdict. The committee history leading to the formulation and adoption of Fed.R.Crim.P. 24(c) indicates that the federal rules committee considered the possibility of permitting an alternate juror to replace a regular juror who becomes disabled during the jury's deliberations, but rejected it after the United States Supreme Court inquired of the committee whether it had satisfied itself that such a procedure would be desirable or constitutional. *See* ABA Standards for Criminal Justice § 15–2.7, at 15–75 (citing L. Orfield, *Trial Jurors in Federal Criminal Cases*, 29 F.R.D. 43, 46 (1962)); *see also United*

---

**3.** An example illustrating this concern is found in *Peek v. Kemp*, 746 F.2d 672 (11th Cir.1984), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). In that case, the only juror who entertained a reasonable doubt as to the defendant's guilt was excused when he became nervous and upset during deliberations and was replaced with an alternate juror. *Peek*, 746 F.2d at 675–76. A few minutes later, the reconstituted jury returned guilty verdicts on all charges against the defendant. *Id.* The *Peek* court held that the trial judge had failed to make a reliable determination whether the regular juror was incapacitated, had failed to ensure that the regular juror understood his right to adhere to his view, and had failed to instruct the reconstitut-

ed jury to begin deliberations anew. Thus, the substitution procedure had deprived the defendant of his state constitutional right to a trial by a fair and impartial jury and his due process right to a fair trial. *Peek*, 746 F.2d at 681.

**4.** Fed.R.Crim.P. 24(c) provides in pertinent part that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties" and that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

*States v. Hillard,* 701 F.2d 1052, 1057 (2d Cir.1983), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983). The problem of mid-deliberation juror unavailability in federal court was at least partially resolved in 1983 when Fed.R.Crim.P. 23(b) was amended to allow deliberations to continue with eleven jurors even without stipulation by the parties if it becomes necessary to excuse a juror for just cause during deliberations.[5] A majority of the federal rules committee concluded that this procedure was preferable to allowing alternates to be substituted after deliberations had begun.[6] *See* 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 388 (2d ed. 1988 Supp.).

A number of federal courts have considered the issue of whether the mid-deliberation substitution of an alternate juror for a regular juror constitutes reversible error.[7] Although these courts uniformly hold that mid-deliberation juror substitution is a violation of Fed.R.Crim.P. 24(c), the majority find a harmless violation when the trial court has used safeguards to neutralize the possible prejudice to the defendant and preserve his right to a full consideration of his case by an impartial jury panel. *See, e.g., United States v. Guevara,* 823 F.2d 446 (11th Cir.1987); *United States v. Josefik,* 753 F.2d 585 (7th Cir. 1985), *cert. denied,* 471 U.S. 1055, 105 S.Ct. 2117, 85 L.Ed.2d 481 (1985); *United States v. Hillard,* 701 F.2d 1052 (2d Cir.1983), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983); *United States v. Kaminski,* 692 F.2d 505 (8th Cir.1982); *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). *But see United States v. Lamb,* 529 F.2d 1153 (9th Cir.1975) (establishing absolute rule under which violation of Fed.R.Crim.P. 24(c) requires reversal).

In *People v. Boulies,* 690 P.2d 1253 (Colo.1984), we held that the presence of an alternate juror during deliberations impinges upon a defendant's constitutional right to a jury of no more than twelve members and the guarantee that the jury will reach its verdict in secrecy. 690 P.2d at 1255–56. We held that this impingement was sufficient to create a presumption of prejudice that, if not rebutted, requires reversal. *Id.*[8] The concern in *Boulies* was that "[o]nce

---

**5.** Prior to 1983, Fed.R.Crim.P. 23(b), like our Crim.P. 23(a)(7), required the stipulation of counsel in order to proceed with an eleven-member jury. Thus, the federal rules operated like the Colorado rules and statutes to enable a defendant to force a mistrial by refusing to agree to an eleven-member jury when a juror became unavailable during deliberations. Without the defendant's stipulation, the previous version of Fed.R.Crim.P. 23(b) prevented the court from proceeding with a jury of eleven, and Fed.R.Crim.P. 24(c) barred post-submission substitution. *United States v. Gambino,* 788 F.2d 938, 948 (3d Cir.1986), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986).

**6.** The United States Supreme Court held in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), that the jury trial right of the sixth and fourteenth amendments to the United States Constitution does not require a jury of twelve in a state criminal trial. In Colorado, the right to a jury of twelve and twelve only in non-capital felony cases is based upon a statutory provision and not constitutional necessity. *People ex rel. Hunter v. District Court,* 634 P.2d 44, 46 (Colo.1981); *see* § 18–1–406(1), 8B C.R.S. (1986); Crim.P. 23(a)(1).

**7.** A few states now have statutes or procedural rules allowing substitution of an alternate at any time before or after submission of the case to the jury. *See, e.g.,* Cal.Penal Code § 1089 (West 1985); N.J.R.Proc. 1:8–2(d) (West 1989). These have withstood constitutional attack, although they have been construed to contain implicit requirements that deliberations must begin anew when a substitution is made after final submission to the jury. *People v. Collins,* 131 Cal.Rptr. 782, 552 P.2d 742 (1976), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977); *State v. Miller,* 76 N.J. 392, 388 A.2d 218 (1978). *But see State v. Corsaro,* 107 N.J. 339, 526 A.2d 1046 (1987) (trial court committed plain error when it substituted a juror after the return of verdicts on some counts in order to reach verdicts on the remaining counts). However, the New York Court of Appeals has struck as violative of the New York Constitution a state statute allowing alternate jurors to be recalled to substitute for regular jurors after deliberations have begun. *People v. Ryan,* 19 N.Y.2d 100, 278 N.Y.S.2d 199, 224 N.E.2d 710 (1966).

**8.** In *Boulies* the record did not establish whether the alternate juror was actually present during the jury's deliberations. We remanded the case to the trial court to resolve that factual issue. 690 P.2d at 1255.

the prescribed number of jurors becomes 'the jury,' then, and immediately, any other persons are strangers to its proceedings." *Id.* at 1256 (quoting *United States v. Beasley,* 464 F.2d 468, 470 (10th Cir.1972)). We therefore concluded that the presence in the jury room of any person unauthorized to participate in the deliberations destroys the sanctity of the jury, which must reach its decision in private and free from outside influence. *Id.* at 1256–57.

*Boulies* addressed the effect of the unauthorized *presence* of an alternate juror in the jury room during deliberations. In this case, we have been called upon to determine the effect of the unauthorized *participation* of an alternate juror in deliberations when one of the original jurors is unable to continue to participate and is excused. We conclude that the danger of prejudice associated with an alternate's presence in the jury room during deliberations applies with at least equal force when the stranger to the proceedings is given a voice in the deliberations.

■ We therefore conclude that requiring prejudice to be presumed from a violation of Crim.P. 24(e) is consistent with *Boulies* and best accommodates the fundamental concern of protecting the deliberative process of the jury. *See Peek v. Kemp,* 746 F.2d 672, 680 (11th Cir.1984), *cert. de-*

*nied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). Because a just verdict cannot be reached if there is an inappropriate interference with or intrusion upon the deliberative process, *id.,* the mid-deliberation replacement of a regular juror with an alternate must be presumed to have prejudiced the defendant. Such a presumption can be overcome only by a showing that the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and that under the circumstances of the case, the precautions were adequate to achieve that result.[9] *See, e.g., Guevara,* 823 F.2d at 447–48.[10]

### 3.

■ No such extraordinary precautions were taken in the instant case to protect Burnette's constitutional right to a trial by a fair and impartial jury. The alternate juror entered the jury room after the eleven regular jurors had sifted the evidence for four and one-half hours, and may well have made progress toward formulating positions. The reconstituted jury then deliberated for only one-half hour before being dismissed for the day and returning to deliberate for a portion of the following day until they reached agreement. Although the trial judge instructed the regular jurors to begin deliberations anew, he did not inquire of them whether they would

**9.** It is unnecessary to remand for an evidentiary hearing on the issue of prejudice because the relevant inquiry in determining whether the presumption of prejudice has been overcome is whether the trial court employed adequate precautionary measures to obviate the danger of prejudice, an inquiry to be resolved on the basis of the record. *See Phillips,* 664 F.2d at 996; *cf. Boulies,* 690 P.2d at 1256 n. 5 (requiring an evidentiary hearing to determine if presumption of prejudice was rebutted where facts extrinsic to the record could be relevant to the determination).

**10.** The federal courts typically do not adopt a presumption of prejudice based on mid-deliberation juror substitution but instead examine the procedures adopted by the trial court to obviate prejudice to the defendant in order to determine whether the violation of Fed.R.Crim.P. 24(c) was harmless. *See, e.g., Guevara,* 823 F.2d at 448; *Josefik,* 753 F.2d at 587; *Phillips,* 664 F.2d at 991–96. These courts are quick to point out that deviations from the mandatory require-

ments of Fed.R.Crim.P. 24(c) will be tolerated only in exceptional circumstances and only when extraordinary precautions are taken to minimize prejudice to the defendant. *United States v. Kopituk,* 690 F.2d 1289, 1311 (11th Cir.1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983); *Phillips,* 664 F.2d at 996.

For example, in *Guevara* the Eleventh Circuit Court of Appeals found significant to its conclusion that the defendant was not prejudiced by the mid-deliberation juror substitution that the original jury had deliberated for only a short period before being joined by the alternate juror, that the trial judge had questioned the alternate juror as to whether he had been exposed to improper outside influences, that the judge had inquired of the regular jury members whether they would be able to begin their deliberations anew, that all notes and materials compiled by the jurors during previous deliberations had been confiscated, and that the judge had recharged the jury after the alternate juror had been impaneled. *Guevara,* 823 F.2d at 447–48.

be capable of disregarding their previous deliberations and any opinions they may have formed on the questions presented by the evidence. Nor did the trial judge ask them whether they could be receptive to the alternate juror's attempt to assert a non-conforming view. Moreover, the alternate juror, who had been released from his duties for approximately twenty-four hours before being recalled, had resumed his normal functions in the community. Although he had been instructed by the trial judge not to discuss with others his "view of the case" or what his verdict would be, he was not told to refrain from forming an opinion based on information that might come to his attention after his discharge. When he returned to the courthouse to participate in deliberations, he was not questioned about his activities or his present ability to serve on the jury. In sum, the trial judge received no assurances from either the remaining regular jurors or the alternate juror that the ability of the reconstituted jury to render a fair verdict would be unimpaired by the substitution.

It is not our intention to sanction a clear deviation from Crim.P. 24(e) where the possibility of prejudice to the defendant is so great. However, we acknowledge that the factual circumstances in which an unauthorized substitution of an alternate juror during deliberations may occur are manifold and that under certain circumstances the presumption of prejudice that flows from a juror substitution during the course of jury deliberations may be rebutted. Nevertheless, because the presumption of prejudice was not overcome in the case before us, we affirm the judgment of the court of appeals.

VOLLACK, J., specially concurs.

VOLLACK, Justice, specially concurring:

Crim.P. 24(e) provides that alternate jurors "shall replace jurors who, *prior* to the time the jury retires," become unable or disqualified to act as jurors. 7B C.R.S.

(1987). Otherwise, an alternate juror "*shall* be discharged at the time the jury retires to consider its verdict." The procedure described in Crim.P. 24 does not provide for a rebuttable presumption, and I write separately because I do not agree that this court should go beyond the plain language of the rule to create such a presumption.

The majority notes that "[t]here is no authority in Colorado ... for a trial court to substitute a previously discharged alternate for a regular juror after deliberations have begun." Majority, slip op. at 9. Wisconsin adopted a *per se* rule when it "decline[d] to infer from a silent statute that the legislature approves substitution during jury deliberations." *Wisconsin v. Lehman*, 108 Wis.2d 291, 299–300, 321 N.W.2d 212, 219–20 (1982). Although *Lehman* was addressing the statute,[1] I would adopt the reasoning of the Wisconsin Supreme Court:

[I]n view of the significant division of opinion in the legal community as to the wisdom and constitutionality of allowing substitution of an alternate juror after the jury has begun deliberations, we decline to infer legislative approval of such substitution from a silent statute. We hold that *in the absence of express authorization by statute or rule* for substitution of an alternate juror for a regular juror after jury deliberations have begun or in the absence of consent by the defendant to such substitution, hereafter it is *reversible error* for a circuit court to substitute an alternate juror for a regular juror after deliberations have begun. The decision whether an alternate juror should be permitted to replace a juror who dies, becomes disabled or is otherwise disqualified during the jury's deliberations is *a policy decision which should not be made by each circuit court on a case-by-case basis without any established guidelines*. Until there is express authorization permitting a circuit court to substitute an alternate juror during jury deliberations, the circuit

---

1. The Wisconsin statute is analogous to F.R.C.P. 24(c) in "not expressly provid[ing] for replacement of regular jurors after the jury retires to consider its verdict." *Id.* at 301, 321 N.W.2d at 221.

court has only three options available to it if a regular juror is discharged after jury deliberations have begun: first, to obtain a stipulation by the parties to proceed with fewer than twelve jurors; second, to obtain a stipulation by the parties to substitute a juror; and third, to declare a mistrial.

108 Wis.2d at 302–303, 321 N.W.2d at 222–23 (emphasis added).

The *per se* rule was also adopted by the Ninth Circuit Court of Appeals in *United States v. Lamb*, 529 F.2d 1153, 1154 (9th Cir.1975) ("[R]eversal is required because of the failure of the District Court to comply with the plain requirements of Fed.R. Crim.P. 24(c).").

The District of Columbia Court of Appeals has also held that

[a]lthough the rule does not specifically address the question of post-deliberation substitution, it unquestionably implies that the court would violate the rule if it replaced a juror with an alternate after the jury retired. "[W]hen the language of a statute is clear and admits of no more than one meaning, we are not empowered to look beyond the literal words of the statute," unless the clarity of the language, upon careful scrutiny, is "superficial," or literal application would provide "absurd results," create an "obvious injustice," or frustrate the "legisla-

tive purpose." *The same interpretive policy applies to court rules.*

*Bulls v. United States*, 490 A.2d 197, 200 (D.C.App.1985) (citations omitted) (emphasis added).

Based on the mandatory and unambiguous language of Crim.P. 24(e), I would conclude that the mid-deliberation juror substitution ordered by the court in this case was reversible error. *Berry v. Florida*, 298 So.2d 491, 492 (Fla.App.1974) ("The language of this rule is mandatory, not permissive. The trial judge must discharge an alternate juror who does not replace a principal juror, at the time the jury retires to deliberate."). If appropriate, the rule could be amended to provide a procedure for mid-deliberation juror substitutions, or to provide for the use of eleven jurors under certain circumstances. At this time, the rule contains no such provisions. Because I do not agree with the creation and adoption of a rebuttable presumption under Crim.P. 24(e), I concur in the result only.