Brian K. COPELAND, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

MBNA AMERICA, N.A., Defendant–Appellee.

No. 93CA1191.

Colorado Court of Appeals, Div. IV.

May 26, 1994.

Rehearing Denied June 23, 1994.

Certiorari Granted Oct. 24, 1994.

Bader & Villaneuva, P.C., Gerald L. Bader, Jr., Jeffrey M. Villaneuva, Renee B. Taylor, Denver, for plaintiff-appellant.

Ireland, Stapleton, Pryor & Pascoe, P.C., D. Monte Pascoe, Scot M. Peterson, Denver,

Sullivan & Cromwell, John L. Warden, Richard J. Urowsky, Lori S. Sherman, New York City, for defendant-appellee.

Davis Graham & Stubbs, William A. Bianco, Denver, Wilmer, Cutler & Pickering, Ronald J. Greene, Christopher R. Lipsett, Charles A. Mendels, Craig M. Blackwell, Washington, DC, amicus curiae for Bank of America NT & SA; Bank One, Columbus, N.A.; Citibank (South Dakota), N.A.; and Household Bank (Nevada), N.A.

Opinion by Judge MARQUEZ.

In this action for refund of all delinquency or late payment charges to credit card holders, plaintiff, Brian K. Copeland, on behalf of himself and all others similarly situated, appeals the judgment entered on the pleadings in favor of defendant, MBNA America, N.A. (MBNA). We affirm.

MBNA, a national bank located in Delaware, issues Visa and Mastercard credit cards to customers nationwide. Plaintiff, a Colorado resident and a holder of one of MBNA's credit cards, filed this consumer class action on behalf of himself and all Colorado residents who have been charged late fees on credit cards issued by MBNA.

The late fee is outlined in MBNA's cardmember agreement. Under the agreement, failure to make a minimum payment by 25 days after the payment due date triggers a $15 late payment charge. MBNA, however, does not include late charges in the computation of its annual percentage rate and separately identifies finance charges and late charges on the monthly billing statement.

In his complaint, plaintiff contends that the late fees violate §§ 5–5–202 and 5–3–203(5)(a), C.R.S. (1992 Repl. Vol. 2) of the Colorado Consumer Credit Code and § 6–1–105, C.R.S. (1992 Repl. Vol. 2) of the Colorado Consumer Protection Act and that they have unjustly enriched defendant.

On appeal, the issue is whether § 85 of the National Bank Act of 1864, 12 U.S.C. § 85 (1988), preempts Colorado law which ostensibly prohibits the late fees of which plaintiff complains. This question turns on the meaning of "interest" in § 85 and the doctrine of preemption.

Section 85 of the National Bank Act allows national banks such as MBNA to charge their credit card customers "interest at the rate allowed by the laws of the State ... where the bank is located." 12 U.S.C. § 85 (1988). For MBNA, that would be the rate allowed by Delaware.

■ Under Delaware law, interest includes late fees. See Del.Code Ann. tit. 5, §§ 945 and 950 (Supp.1990). In addition, a national bank may "export" a favorable interest rate from the state in which it is located in transactions with borrowers from other states. Marquette National Bank v. First Omaha Service Corp., 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978); Hill v. Chemical Bank, 799 F.Supp. 948 (D.Minn.1992).

I.

■ Plaintiff, however, contends that the term "interest" as used in § 85 does not include late fees and that, thus, MBNA may not export the late fees from Delaware. We disagree.

Quoting from Greenwood Trust Co. v. Commonwealth of Massachusetts, 971 F.2d 818 (1st Cir.1992), we have previously noted the following about § 85 of the National Bank Act:

'Several courts ... have had little trouble in construing the term "interest" to encompass a variety of lender-imposed fees and financial requirements which are independent of a numerical percentage rate. See, e.g., American Timber & Trading Co. v. First Nat'l Bank, 690 F.2d 781, 787–88 (9th Cir.1982) (compensating balance requirement); Fisher v. First Nat'l Bank, 548 F.2d 255, 258–61 (8th Cir.1977) (fee for cash advance); Panos v. Smith, 116 F.2d 445, 446–47 (6th Cir.1940) (taxes and recording fees); Cronkleton v. Hall, 66 F.2d 384, 387 (8th Cir.) (bonus or commission paid to lender), cert. denied, 290 U.S. 685, 54 S.Ct. 121, 78 L.Ed 590 (1933); Nelson v. Citibank (South Dakota) N.A., 794 F.Supp. 312, 318 (D.Minn.1991) (late fees).'

Stoorman v. Greenwood Trust Co., —— P.2d ——, —— (Colo.App. No. 93CA0224, April 7,

1994); *see Tikkanen v. Citibank (South Dakota) N.A.*, 801 F.Supp. 270 (D.Minn.1992).

Although *Stoorman* involved interpretation of § 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA), 12 U.S.C. § 1831d (1988), we noted the similarities between § 521 and § 85 and relied on cases interpreting § 85 of the Bank Act. This definition of interest then is not part of an improper delegation to the states of the power to define interest. *See Tikkanen v. Citibank (South Dakota) N.A., supra.*

Thus, following *Stoorman,* we conclude that the term "interest" under § 85 includes late fees.

## II.

We turn now to whether § 85, as interpreted above, preempts Colorado law that arguably prohibits the late fees charged by MBNA. Plaintiff argues that it does not. We disagree.

At the outset, we note that *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537 (D.Colo.1993) does not preclude a preemption analysis by this court. While concluding that complete preemption does not provide a basis for federal jurisdiction, the federal district court noted:

> This holding resolves only the *jurisdictional* question of complete preemption and does not prevent MBNA from raising preemption as a defense to Copeland's claims. This court expresses no opinion on that issue.

*Copeland v. MBNA America, N.A., supra,* 820 F.Supp. at 541 (fn. 5) (emphasis in original). Thus, we turn to the merits of a preemption defense.

■ The preemption doctrine is derived from the supremacy clause of the United States Constitution. U.S. Const. art. VI, cl. 2. Congress can preempt state law either by expressly declaring that states are precluded from legislating in an area of law, or, if there is no express preemption, state legislation may be preempted as a result of implied preemption or conflict preemption. *See Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 75

L.Ed.2d 752 (1983); *Rosa v. Warner Electrical Contracting,* 870 P.2d 1210 (Colo.1994).

■ In any preemption analysis, the question whether federal law preempts a state statute is one of congressional intent. *Banner Advertising, Inc. v. People,* 868 P.2d 1077 (Colo.1994).

■ Here, we conclude that conflict preemption applies. This form of preemption is implicated when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Banner Advertising, Inc. v. People, supra.*

■ The Congress that enacted the original National Bank Act expressly intended to facilitate a national banking system. *Marquette National Bank v. First Omaha Service Corp., supra.*

In *Marquette,* a party argued that the "exportation" of interest rates from a national bank's "home state" into a foreign state would "significantly impair the ability of States to enact effective usury laws." The Supreme Court stated that such impairment "has always been implicit in the structure of the National Bank Act, since citizens of one State were free to visit a neighboring State to receive credit at foreign interest rates." *Marquette National Bank v. First Omaha Service Corp., supra,* 439 U.S. at 318, 99 S.Ct. at 550, 58 L.Ed.2d at 548 (1978).

Moreover, we have already concluded that the Bank Act allows MBNA to charge its credit card customers interest (which includes late fees) at the rate allowed by the laws of Delaware (where interest also includes late fees). Therefore, any Colorado law prohibiting such a charge stands as an obstacle to the accomplishment and execution of the Bank Act.

Thus, as a matter of law, plaintiff's claims are preempted and the complaint was properly dismissed.

The judgment is affirmed.

PLANK and ROTHENBERG, JJ., concur.