**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Phillip M. MONTOYA, Defendant– Appellant.**

**No. 95CA0265.**

Colorado Court of Appeals, Div. IV.

Dec. 27, 1996.

Rehearing Denied Jan. 30, 1997.

Certiorari Denied Sept. 8, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul Koehler, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for Defendant–Appellant

Opinion by Judge CASEBOLT.

Defendant, Phillip Montoya, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree murder and conspiracy to commit first degree murder. We affirm.

Prosecution evidence indicated the following events occurred. Motivated by the victim's having quit defendant's street gang and formed another gang, defendant and other gang members decided to kill the victim. Because the defendant knew where the victim's bedroom was located, he agreed to go with another gang member (shooter) and assist him in shooting the victim through the bedroom window.

The shooter and defendant proceeded to the victim's window and propped up a bookcase against the house in order to gain access to the window. Standing on the bookcase, the shooter shot the victim as he lay in his bed.

After the shooting, the gang separated. Once the defendant reached another gang member's home, he recounted to the other gang member the events that had transpired after he had gone to the victim's window.

Two other members of the gang told a gang member's mother that the group had been attacked by the victim's gang and had fired a shot into that gang, hitting the victim. The next day, the mother and a gang member threw the murder weapon into a lake.

Pursuant to plea agreements, two of the gang members later testified for the prosecution.

At trial, after deliberating for over four hours, the jury informed the trial court that it had reached a verdict. Upon the jury's return, each member was polled, whereupon one of the jurors responded inconsistently. Upon investigation, the court learned that the juror in question had a severe hearing impediment, had missed a significant portion of the trial testimony, and much of what he had been able to understand from the other jurors during deliberations had come from his ability to lip read.

Over defendant's objection, the trial court applied Crim.P. 24(e), replaced the juror with an alternate, and instructed the jury to commence deliberations anew. After six hours of deliberations, the reconstituted jury found the defendant guilty of first degree murder as a complicitor, based on its finding that the defendant had aided, abetted, and advised his fellow gang member in the shooting of the victim. The jury also found the defendant guilty of conspiring to commit first degree murder.

I.

Defendant first asserts that the trial court erred in denying his challenges for cause to several jurors. We disagree.

Trial courts are afforded broad discretion in deciding whether to grant or deny a challenge for cause to a potential juror, and a decision denying such a challenge will be set aside only when the record discloses a clear abuse of that discretion. *People v. Sandoval*, 733 P.2d 319 (Colo.1987).

It is within the trial court's prerogative to give considerable weight to a potential juror's statement that he or she can fairly and impartially serve on the case. If the trial court is satisfied that a potential juror will render a fair and impartial verdict according to the law and to the evidence submitted at trial, that person should not be disqualified.

*People v. Sandoval, supra;* § 16–10–103(1)(j), C.R.S. (1986 Repl.Vol. 8A); Crim.P. 24(b)(1)(X).

■ Here, the defendant argues that the trial court should have excused three prospective jurors based on their statements during voir dire. The three jurors stated, in effect, that they believed that for a case to come to trial there must be some substance to the charges. The defendant interprets these statements to mean that the jurors would not have correctly presumed his innocence or placed the burden of proof on the prosecution.

The trial court responded to the jurors' statements by instructing them on the presumption of innocence, specifically informing them that the prosecution alone bore the burden of proving its case. The trial court then asked each of the three jurors whether they would follow the court's instructions in coming to a verdict. Each juror responded that he or she would follow the court's instructions of law and would presume the defendant innocent until proven guilty.

■ The trial judge, because of the advantage of personal observation, is the only judicial officer able fully to assess the attitudes and state of mind of a potential juror in giving responses to difficult questions. *People v. Sandoval, supra.* With this in mind, and based on the responses of the three jurors to the trial court's inquiries, we conclude that no abuse of discretion by the trial court has been demonstrated in regard to its refusal to dismiss the jurors for cause.

## II.

■ Defendant next maintains that, since any conspiracy had ended before certain out-of-court statements were made by his cocon-spirators, the trial court erred in admitting those hearsay statements. However, we need not address the issue of whether the statements were properly admitted as being made in furtherance of the conspiracy because we conclude that, even if the trial court erred in admitting the statements, such error was harmless.

■ A trial court's evidentiary ruling will be deemed harmless only if a reviewing court can say with fair assurance that, in light of the entire record at trial, the error did not substantially influence the verdict or impair the fairness of the trial. *People v. Bowers,* 801 P.2d 511 (Colo.1990).

Here, the defendant specifically objects to post-shooting statements made by the gang member's mother who testified that, shortly after the shooting, her son and other gang members told her that their gang had fired upon the victim's gang, striking the victim, after the victim's gang had attacked them. The mother also testified to statements made by a gang member about hiding the gun used to shoot the victim.

The gang member's statements to the mother did not mention the defendant and are of little probative value as to whether the defendant conspired with and aided and abetted the other gang members in the shooting of the victim. Further, the statements at issue were not of such a nature as to prejudice the jury's determination of the defendant's guilt. The crucial evidence in determining the guilt of the defendant came from the direct, in-court testimony of two gang members as to the events leading up to the shooting, as well as from the defendant's statements to those gang members about how he helped the shooter kill the victim.

Thus, even if we were to assume that the trial court improperly admitted the co-conspirator statements under CRE 801(d)(2)(E), in light of the entire record, we can say with fair assurance that the statements did not substantially influence the verdict or impair the fairness of the trial. Hence, any error was harmless. *See* Crim.P. 52.

## III.

Defendant next contends that the trial court erred in denying his motion to sever his trial from that of his codefendant. We disagree.

### A.

■ A defendant is entitled to severance of trial as a matter of right if there is evidence which is admissible against one but not

all of the parties and if that evidence is prejudicial to the defendant against whom the evidence is not admissible. *People v. Lesney,* 855 P.2d 1364 (Colo.1993); § 16–7–101, C.R.S. (1986 Repl.Vol. 8A); Crim.P. 14. Otherwise, a motion for severance is addressed to the sound discretion of the trial court, and the trial court's decision will be affirmed absent a showing of an abuse of discretion and actual prejudice to the moving party. *Peltz v. People,* 728 P.2d 1271 (Colo. 1986).

The supreme court has interpreted § 16–7–101 to mean, in the mandatory severance setting, that the trial court must determine whether the admitted evidence was so inherently prejudicial that the jury could not have limited its use to its proper purpose. *People v. Gonzales,* 198 Colo. 450, 601 P.2d 1366 (1979).

 Here, the defendant argues that, because his guilt or innocence as a complicitor and conspirator was premised on his actions before and during the shooting of the victim, evidence concerning events occurring after that time was irrelevant and would have been inadmissible if the defendant had been tried separately from his co-defendant. As before, defendant objects to the testimony of the mother describing the efforts to dispose of the gun, as well as the co-conspirator statements admitted under CRE 801(d)(2)(E).

However, if we assume, *arguendo,* that the defendant is correct and that this evidence was inadmissible as to him, to be entitled to severance, he still must show that the evidence was so inherently prejudicial that the jury could not have limited its use to its proper purpose. *See People v. Gonzales, supra.*

While defendant claims that testimony regarding disposition of the gun and the co-conspirator statements was "extremely prejudicial" to his case, he provides no explanation as to why this was so. To the contrary, the defense strategy was to show that the defendant did not aid or abet in the shooting of the victim because he thought the gang intended only to shoot out the victim's windows. We do not perceive how testimony regarding disposition of the murder weapon—making no mention of the defendant—or the co-conspirator's statements, would prejudice this defense.

Hence, we conclude that this evidence was not so prejudicial that the jury could not have properly limited its use against the defendant and, thus, further conclude that the defendant was not entitled to a severance as a matter of right.

### B.

 We also conclude that the trial court did not err in denying the defendant's motion for severance as a discretionary matter.

A trial court has discretion to grant a severance if it appears that a defendant is prejudiced by a joinder of defendants. Crim.P. 14.

 Factors to be considered in determining whether denial of a severance constitutes an abuse of discretion include: (1) whether the number of defendants or the complexity of evidence is such that the jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be considered against another; and (3) whether the defenses are antagonistic. *Peltz v. People, supra.*

Here, neither the number of defendants nor the complexity of evidence would precipitate jury confusion. There were only two defendants in this case and the evidence against both consisted primarily of the in-court testimony of the two gang members who had agreed to testify for the prosecution.

Next, as previously discussed, the evidence was not so prejudicial that the jury could not have properly limited its use.

Finally, the defendants asserted non-antagonistic defenses. Both admitted their presence at or near the murder scene, but contended that they did not aid or abet the shooting. Also, neither attempted to place the blame on the other.

Under these circumstances, we conclude that the trial court did not abuse its discretion when it refused to grant defendant's motion for severance.

## IV.

The defendant next asserts that the trial court erred because it improperly limited cross-examination concerning the bias and motive of one of the gang members who had entered into a plea agreement and testified during the prosecution's case-in-chief. We are not persuaded.

The right to confront and cross-examine witnesses is guaranteed by the Sixth Amendment and by Colo. Const. art. II, § 16. The right is tempered, however, by the trial court's authority to prohibit cross-examination on matters wholly irrelevant and immaterial to issues at trial. *People v. Collins,* 730 P.2d 293 (Colo.1986).

When the jury is fully informed as to the original charge brought against a prosecution witness as well as the charge to which the witness later pleaded guilty in exchange for his or her testimony, and the jury also hears about the penalty actually received, the jury has been provided with adequate facts from which it can appropriately draw inferences relating to bias and motive. Provided the jury is so informed, the defendant is not denied his right to cross-examination if the trial court refuses to allow evidence concerning the difference in the range of possible penalties between the original crime charged and the charge actually sustained. *See People v. Collins, supra.*

Here, the prosecution witness testified that, in exchange for his testimony, the first degree murder charge originally brought against him had been reduced to accessory to first degree murder carrying a four-year term of probation. The defendant, however, argues that the trial court prevented him from fully cross-examining this witness because the court refused to allow him to question the witness on his knowledge of the possible penalties for first degree murder.

We conclude that *Collins* is controlling here and are not persuaded by defendant's attempts to distinguish that case. Hence, the defendant was not denied his right to effective cross-examination.

## V.

The defendant further contends that the trial court erred in refusing to submit his jury instruction concerning uncorroborated accomplice testimony. We disagree.

*COLJI-Crim.* 4:06 (1983)—warning the jury to act with care and caution when considering accomplice testimony—is to be given *only* when the prosecution's case is based on uncorroborated testimony of an accomplice. The propriety of a trial court's refusal to give this instruction thus turns on whether corroborating evidence of the accomplice's testimony exists in the record.

Evidence to corroborate an accomplice may be direct or circumstantial. It should identify the defendant and show his connection with the offense, rather than merely tending to prove that an offense has been committed. Accomplice testimony, however, need not be corroborated in every part; corroboration of one element of the testimony is sufficient. *People v. Martinez,* 187 Colo. 413, 531 P.2d 964 (1975). *See Miller v. People,* 92 Colo. 481, 22 P.2d 626 (1933) (requiring corroboration of every part of the testimony would render it surplusage).

Furthermore, a confession or admission of the accused is admissible to corroborate the testimony of an accomplice. *Tollifson v. People,* 49 Colo. 219, 112 P. 794 (1910).

Here, the testimony of the defendant's two accomplices is corroborated by other evidence in the record.

First, the defendant's own admissions reveal his connection with the offenses. The defendant admits being with the other gang members before and during the shooting. He also agrees with the accomplices' descriptions of most of the essential acts and statements leading up to the shooting. Further, in the opening statement, the defendant concedes that he accompanied the shooter to the victim's window. These admissions corroborate at least a part of the accomplice's testimony. *See Miller v. People, supra* (defendant's admission to being present during exchange of stolen property corroborated accomplice's testimony as to a previous conversation with the defendant).

Second, the physical evidence from the scene of the crime corroborates the testimony of the defendant's accomplices and connects him with the crime. Based upon the defendant's statements to them, the accomplices testified that the defendant had helped to place a bookcase under the victim's window. The bookcase, as well as other items described by the defendant to the accomplices as being near the victim's window, appears in photographic exhibits in the record.

In light of such corroboration, the trial court correctly rejected the defendant's request for a jury instruction on uncorroborated accomplice testimony. Indeed, it would have been misleading for the trial court to suggest to the jury that there was no corroborating evidence, when, as a matter of fact, there was. *See People v. Martinez, supra.*

Because we conclude that the testimony of the defendant's accomplices was corroborated by both direct and circumstantial evidence, we need not reach the issue of whether one accomplice's testimony is sufficient, in and of itself, to corroborate another accomplice's testimony.

## VI.

The defendant finally maintains that the trial court erred in denying his motion for mistrial when, after the jury had returned with an initial, but inconsistent, verdict, it became necessary to replace an original juror with an alternate. We disagree.

■ Mistrial is a drastic remedy and is warranted only when the prejudice to the defendant is too substantial to be remedied by other means. *People v. Collins,* 730 P.2d 293 (Colo.1986). A trial court has broad discretion in determining whether a mistrial is required, and its determination may be reversed only when there is a gross abuse of discretion and prejudice to the defendant. *People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Gillis,* 883 P.2d 554 (Colo.App. 1994).

### A.

■ Defendant first argues that the trial court erred in applying Crim.P. 24(e), which permits the replacement of a regular juror with an alternate during deliberations, rather than § 16–10–105, C.R.S. (1996 Cum.Supp.), which does not. We agree, but conclude that the error does not require reversal.

■ Before a court determines whether a rule of court or a statute prevails, there must first be a conflict between the two. *See People v. Hollis,* 670 P.2d 441 (Colo.App. 1983).

■ When a conflict exists, the next appropriate inquiry is whether the statute regulates procedural or substantive matters. *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978). If it regulates substantive matters, the statute prevails over the rule; if it purports to regulate the procedural functioning of the courts, in violation of the concept of separation of powers, it will not. *People v. Wiedemer,* 852 P.2d 424 (Colo.1993).

Crim.P. 24(e) states that: "Alternate jurors in the order in which they are called *shall replace jurors who become unable or disqualified to perform their duties.* ... An alternate juror *shall not be discharged until the jury renders its verdict* or until such time as determined by the court." (emphasis added)

Section 16–10–105, C.R.S. (1996 Cum. Supp.), which also provides for use of alternate jurors, provides, in pertinent part: "Alternate jurors in the order in which they are called shall replace jurors who, *prior to the time the jury retires to consider its verdict,* become unable or disqualified to perform their duties.... An alternate juror *shall be discharged when the jury retires to consider its verdict* or at such time as determined by the court." (emphasis added)

When a juror becomes unable to perform his or her duties after deliberations have begun, the rule and statute appear to permit a trial court to respond to the situation in conflicting ways. The rule allows a trial court to replace a discharged juror at any time prior to a verdict, while the statute forbids the substitution of a regular juror

with an alternate after deliberations have commenced.

Notwithstanding the plain language of § 16–10–105, the prosecution argues that the statutory phrase "or at such time as determined by the court" demonstrates that the General Assembly meant to allow alternate jurors to replace regular jurors *after* the commencement of deliberations. The prosecution's interpretation would mean that, despite the facially contradictory language of Crim. P. 24(e) and § 16–10–105, both provisions would be functionally identical. We decline to adopt such an interpretation.

 In construing a statute, our central purpose is to ascertain and give effect to the intent of the General Assembly. In so doing, we look first to the language of the statute itself. When that language is clear so that the intent can be discerned with reasonable certainty, there is no need to resort to other rules of statutory interpretation. Furthermore, we must avoid constructions that would defeat an obvious purpose of a statute and must adopt an interpretation that gives consistent, harmonious, and sensible effect to all of the statute's provisions. *People v. Wiedemer, supra; Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992).

 Here, § 16–10–105 states that a trial court *shall* replace jurors with alternate jurors *"prior* to the time the jury retires to consider its verdict." (emphasis added) The statute further provides that "an alternate juror shall be discharged when the jury retires to consider its verdict...." The only reading of the phrase "or at such time as determined by the court" that gives effect to the clear intent of the full statute is one that interprets it to mean that "such time" for possible discharge is *prior* to the commencement of deliberations.

To adopt the prosecution's interpretation of this phrase to mean a time *subsequent* to the commencement of deliberations would render the two sentences at issue meaningless. Hence, we conclude that the only interpretation of § 16–10–105 that harmonizes and gives effect to all its provisions is one that forbids the replacement of a regular

juror with an alternate after the jury has retired to consider its verdict.

We also note that our interpretation of § 16–10–105 is supported by the legislative history underlying 1990 and 1991 amendments to § 16–10–105. *See* Hearings on H.B. 1118 before the House Judiciary Committee, 57th General Assembly, Second Session (January 30, 1990); Hearings on H.B. 1118 before the Senate Judiciary Committee, 57th General Assembly, Second Session (February 26, 1990); Hearings on H.B. 1076 before the House Judiciary Committee, 58th General Assembly, First Session (January 17, 1991); Hearings on H.B. 1076 before the Senate Judiciary Committee, 58th General Assembly, First Session (February 25, 1991).

In 1990, in responding to two mistrials caused by the incapacity of jurors occurring during deliberations, the General Assembly amended the statute to require that a trial court retain alternate jurors until a verdict had been rendered. *See* Colo.Sess.Laws 1990, ch. 117 at 924. In 1991, however, the General Assembly decided to return to the pre–1990 requirement that a trial court dismiss alternate jurors at the start of deliberations because many trial courts could not properly sequester alternate jurors apart from the other regular jurors during deliberations. Colo.Sess.Laws 1991, ch. 80 at 429.

Because Crim.P. 24(e) and § 16–10–105 are thus not in agreement concerning when an alternate juror may replace a regular juror, we must decide whether the supreme court rule or the statute properly applies here.

Under the Colorado Constitution, the supreme court has the power to promulgate court rules governing practice and procedure in civil and criminal cases. *See* Colo. Const. art. VI, § 21. The General Assembly, however, has the authority to enact statutes on substantive matters affecting parties involved in civil or criminal cases. *See People v. McKenna, supra.*

To distinguish procedural from substantive matters we must examine the purpose of the statute. If the purpose is to permit the court to function and function efficiently, the matter is procedural and the conflicting statute

must yield to a court rule. Conversely, if the statute embodies a matter of public policy, it is substantive, and the statute controls. *See People v. Wiedemer, supra; People v. Hollis, supra.*

In *People v. Hollis, supra,* a division of this court determined that, when a statute and rule provided for a different number of peremptory challenges, the statute controlled over the rule. The court reasoned that, while peremptory challenges in jury selection have an effect on trial procedure, the statute nonetheless applied because it was primarily an expression of policy concerning the substantive right of securing an impartial and qualified jury.

In *People v. Burnette,* 775 P.2d 583 (Colo. 1989), the supreme court recognized the importance of the deliberative process on a defendant's right to a fair trial by jury. The court recognized that central to ensuring the integrity of the jury function is the necessity that all jurors engage in meaningful deliberations. When an alternate juror is inserted into a deliberative process, there is a danger that the new juror will not have a realistic opportunity to express his or her views and to persuade others.

Thus, although the timing of the replacement of a regular juror indirectly affects court procedure, the overriding purpose of § 16–10–105 is to ensure that a party receives a fair trial by jury. This statute embodies the General Assembly's view that the integrity of a jury's verdict may be compromised if an alternate juror is not able to participate in deliberations from the outset. Such a determination necessarily involves important policy considerations and thus is a matter appropriate for legislative determination.

Accordingly, because § 16–10–105 is the operative provision in this case, the trial court erred in applying Crim. P. 24(e) to permit the replacement of a regular juror with an alternate after the jury had begun its deliberations.

### B.

 Defendant next argues that the trial court's error in replacing the regular juror

with an alternate, after deliberations had begun, requires reversal. We disagree, concluding instead that, because the trial court successfully followed the extraordinary precautions as outlined in *People v. Burnette, supra,* the reconstituted jury's verdict may stand.

In *Burnette,* the supreme court held that the mid-deliberation replacement of a juror with an alternate presumptively prejudices the defendant's right to a fair trial. The court, however, also stated that this presumption could be overcome by a showing that the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and that, under the circumstances of the particular case, the precautions were adequate to achieve that result.

The *Burnette* court concluded that the trial court had not overcome the presumption of prejudice because it had received no assurances from the regular jurors, or the alternate juror, that the reconstituted jury could render a fair verdict unimpaired by the substitution. In reaching its conclusion, the supreme court noted that there had been no inquiry of the remaining jurors whether they would be able to disregard their previous deliberations or be receptive to the alternate juror's possible attempt to assert a non-conforming view. *See also People v. Patterson,* 832 P.2d 1083 (Colo.App.1992) (when replacing a regular juror during deliberations it is of critical importance that the regular jurors be questioned by the trial court regarding their willingness and ability to start deliberations anew with the alternate juror).

Additionally, the *Burnette* court found it significant that the alternate juror had been released from his duties for some twenty-four hours, had resumed his normal functions in the community, and was not questioned about his activities during that time or his present ability to serve on the jury.

In contrast, here, the trial court instructed the jury that it would have to start the deliberations anew, and inquired of each of the original jurors if they could put out of their minds their previous discussions and deliberations and could, in fact, begin their deliberations anew with an alternate juror.

All responded that they could. Although the trial court did not specifically ask the jurors whether they could be receptive to the alternate juror's possibly non-conforming views, the jurors' responses implicitly answered that question in the affirmative.

Moreover, also in contrast to *Burnette*, the trial court here had not dismissed the alternate juror and had instructed her that her jury service was continuing even though she was not deliberating. The trial court also informed the alternate juror, when the original jury commenced deliberations, that the instructions it had given concerning the conduct of jurors remained in effect and told her to avoid any contact with the press.

Also, prior to seating the alternate juror, the trial court questioned her concerning whether she had spoken with anyone about the case, had had contact with anyone who might be associated in any way with the case, had listened to any newscast about it, or had conducted any independent investigation. She responded negatively to all of the trial court's inquiries. Further, she responded affirmatively to questioning as to whether she recalled and had followed all of the instructions the court had given her regarding her conduct as a juror.

Finally, the trial court gave the jury new, blank verdict forms, together with the previously submitted instructions. It then instructed the jurors collectively that they were to begin their deliberations anew uninfluenced by any prior discussions that had taken place. And, the court found that the presumption of prejudice stated in *Burnette* had been overcome by virtue of the inquiries to and responses from the regular and replacement juror.

In short, the trial court here received numerous assurances from both the remaining jurors and the alternate juror that the reconstituted jury would be capable of rendering a fair verdict unimpaired by the substitution. The fact that the reconstituted jury took some two hours longer to come to its verdicts than the original jury had taken lends credence to the assurances provided by the jurors.

We therefore conclude that, even though there was an incorrect replacement of a regular juror with an alternate after the jury had retired to consider its verdict, the trial court successfully undertook the extraordinary precautions necessary to rebut the presumption of prejudice that flows from a juror substitution during the course of jury deliberations, and its findings that the presumption of prejudice had been overcome are supported by the record. Hence, the trial court did not abuse its discretion in refusing to grant the defendant's motion for mistrial.

The judgment is affirmed.

NEY and DAVIDSON, JJ., concur.