718 S.E.2d 506

**Joseph CASACCIO and National Indemnity Company, Petitioners**

v.

**Harold A. CURTISS, Executor of the Estate of Norma Lee Curtiss, Deceased; Harold A. Curtiss, Executor of the Estate of Mary Lynn Curtiss, Deceased; Harold A. Curtiss, Executor of the Estate of Charles E. Curtiss, Deceased, Plaintiffs Below, Respondents**

and

**Hartley Trucking Company, Inc., John R. Tanner and Martha Hoy, Defendants Below.**

No. 101527.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 28, 2011.

Decided Nov. 9, 2011.

---

Daniel R. Schuda, Lynnette Simon Marshall, Schuda & Associates, PLLC, Charleston, WV, for the Petitioners.

Robert B. Allen, Pamela C. Deem, Philip J. Combs, Allen Guthrie & Thomas, PLLC, Charleston, WV, for the Respondents.

DAVIS, Justice:

In this appeal from an order imposing monetary sanctions against petitioners Joseph Casaccio (hereinafter referred to as "Mr. Casaccio") and National Indemnity Company (hereinafter referred to as "National Indemnity"), this Court is asked to determine whether West Virginia Trial Court Rule 25.10 permits a circuit court to impose sanctions upon the insurance carrier for an insured party when the insurance carrier fails, without good cause, to appear at court-ordered mediation through the presence of a representative who has full decision-making discretion to examine and resolve issues and make decisions in connection with the mediation. We find that West Virginia Trial Court Rule 25.10 does authorize a trial court to sanction such an insurance carrier; however, because we find no sanctionable conduct occurred in this case, we reverse the circuit court's order imposing sanctions.

1. Mr. Curtiss represents that the bankruptcy stay applicable to Hartley Trucking had been lifted only to permit the Plaintiffs to recover the proceeds of Hartley Trucking's insurance policy.

2. Prior to the mediation, the mediator, Donald B. O'Dell, Esq., sent a letter dated September 21, 2006, to the parties instructing them, in relevant part, that:

## I.

## FACTUAL AND PROCEDURAL HISTORY

The events giving rise to the lawsuit that ultimately led to the sanctions at issue herein occurred on May 30, 2003, when Charles E. Curtiss, Norma Lee Curtiss, and Mary Lynn Curtiss were killed in a vehicular accident on I-64 East at the Lee Street exit in Charleston, West Virginia. On May 26, 2005, Harold A. Curtiss, in his capacity as Executor of the estates of his parents and sister who were killed in the aforementioned accident (hereinafter referred to as "the Plaintiffs"), filed a wrongful death action against John Tanner and Hartley Trucking Company, Inc. Hartley Trucking was bankrupt, but insurance coverage for the accident was available through a policy issued to Hartley Trucking by Converium.[1]

On March 2, 2006, the circuit court ordered the parties to complete mediation in this case by November 17, 2006. The trial was scheduled for December 3, 2006. The first mediation in this case was held on November 10, 2006. Ms. Jo Knapp, an employee of a third-party administrator, appeared at the mediation as the designated representative of Converium.[2]

Prior to the mediation, on October 16, 2006, Converium entered into a "Stock Purchase Agreement" with National Indemnity whereby National Indemnity agreed to purchase all or certain portions of Converium. The agreement contained the following clause that is relevant to the instant matter, which effectively limited Converium's settlement authority to amounts less than $500,000:

5.1. *Conduct of Business.* ... (b) Except for the Restructuring Transactions, or as set forth in *Schedule 5.1* or any of the other Schedules hereto, or as otherwise

The mediation will be governed by the West Virginia Trial Court Rules; therefore, pursuant to Rule 25.10, the parties, counsel, and a representative of each insurance carrier with full decision-making discretion are required to appear.

contemplated by this Agreement or the Ancillary Agreements from the date hereof to and including the Closing Date, the Seller will not, without the prior written consent of the Purchaser (such consent not to be unreasonably withheld or delayed), permit the Company or any of its Subsidiaries to directly or indirectly:

. . . .

(xiv) settle or compromise any Action, other than (A) any claims or litigation for which the sole remedy is monetary damages in an amount less than $500,000 or, (B) claims or litigation arising out of any Reinsurance Contracts in an amount less than $500,000, (C) as required by a final or non-appealable judgment or an arbitration panel or court, or (D) Regulatory Body Matters; *provided, however,* that if the settlement or compromise of any Regulatory Body Matter would require the Purchaser, the Company or any of its Subsidiaries to admit any liability or pay damages or other amounts in settlement, the Seller may not effect such settlement without the Purchaser's written consent (which consent shall not be unreasonably withheld or delayed)[.]

No representative of National Indemnity appeared at the mediation. Notwithstanding the forgoing agreement limiting Converium's unilateral authority to settle actions to amounts less than $500,000, which had not been communicated to the Plaintiffs or to the mediator, Ms. Knapp made an unqualified offer of $700,000 to settle the case. This offer was rejected. Ultimately, Ms. Knapp agreed to recommend and seek approval for a settlement in the amount of $900,000, and the Plaintiffs agreed to accept $900,000 to settle all claims. At the conclusion of the mediation session, Ms. Knapp, *for the first time,* revealed that the proposed settlement could not be consummated without approval from National Indemnity. Mr. Curtiss relates that Ms. Knapp then promised the Plaintiffs' counsel and the mediator that the Plaintiffs' acceptance of the $900,000 offer would not be used as bargaining leverage

against them if National Indemnity refused to settle the case. National Indemnity refused to consent to the $900,000 settlement. In the week following the mediation, Converium reduced its settlement offer to $350,000[3] at the suggestion of National Indemnity, which reduced offer was made through National Indemnity's Vice President and Legal Counsel, Mr. Casaccio.

The circuit court then ordered the parties to try again to mediate this case on November 27, 2006, and instructed the mediator to inform the parties that certain individuals were to attend the mediation, including a representative of National Indemnity. Mr. Casaccio was National Indemnity's designated representative to attend this mediation. Mr. Casaccio did not appear at the November 27th mediation, claiming that he missed a connecting flight. Nevertheless, Mr. Casaccio participated in the November 27th mediation by phone. The circuit court scheduled a third mediation for November 28, 2006, and again required Mr. Casaccio's presence. Mr. Casaccio attended the November 28th mediation, which took place in Judge Zakaib's chambers, and the case was settled for $850,000.

On December 13, 2006, the circuit court held a summary proceeding and ratified the settlement and proposed distribution of the settlement proceeds. During this proceeding, the circuit court *sua sponte* instructed the parties that it was setting for hearing the issue of whether the conduct of Mr. Casaccio or National Indemnity warranted sanctions under either West Virginia Trial Court Rule 25.10 or the inherent powers of the circuit court.

On December 28, 2006, the circuit court entered an "Order Scheduling Sanctions Hearing on February 7, 2007," which set a hearing date and briefing schedule on the issue of whether the conduct of Mr. Casaccio and/or National Indemnity Company warranted sanctions. Mr. Casaccio and National Indemnity then filed a "Motion to Dismiss for Lack of Jurisdiction; Motion for Due Process Identification of Alleged Wrongful

---

**3.** Mr. Casaccio testified that when he suggested that Converium offer $350,000 to settle the case he was unaware of Converium's prior $700,000 offer or that there had been mediation in the case.

Conduct; and Motion for Identification of Rule Pursuant to Which Sanctions Are Sought." The February 7th hearing was then converted to a hearing on the various motions and petitions that had been filed by the parties. Thereafter, on September 25, 2007, the circuit court denied Mr. Casaccio and National Indemnity's motion. Mr. Casaccio and National Indemnity then petitioned this Court for a writ of prohibition, which petition was denied.

At a hearing on May 15, 2008, the circuit court took evidence and heard oral argument on the issue of sanctions. On August 22, 2008, the circuit court entered its first sanction order, titled "Plaintiffs' Proposed Findings of Fact, Conclusions of Law and Order Awarding Sanctions." The order awarded the Plaintiffs $50,000 as the difference between the $900,000 settlement to which they initially agreed and the $850,000 for which the case ultimately settled; $25,000 as compensation for injuries caused by Mr. Casaccio's and National Indemnity's conduct; $150,000 to punish Mr. Casaccio and National Indemnity; and attorney's fees expended by the Plaintiffs from the date of the first court-ordered mediation, November 10, 2006, through the date of the entry of the order imposing sanctions. The Plaintiffs were directed to submit an affidavit setting forth their attorney's fees.

On August 29, 2008, the Plaintiffs submitted their attorney's fees and expenses to the circuit court claiming they amounted to $115,279.78. Mr. Casaccio and National Indemnity opposed the attorney's fees. In addition, in November 2008, Mr. Casaccio and National Indemnity filed a motion asking the court to reconsider its August 22, 2008, order.

There was apparently no activity in the case for fifteen months until, on February 22, 2010, the circuit court entered an "Order Regarding Attorney Fees & Expenses," in which it ruled that the Plaintiffs were entitled to an award of attorney's fees and costs in the sum of $48,821.79. It is undisputed that, due to an apparent clerical error, Mr. Casaccio and National Indemnity did not receive a copy of the February 22, 2010, order from the circuit court. Mr. Casaccio and National Indemnity assert that they did not become aware of the February 22, 2010, order until July 2, 2010, when they were contacted by the Plaintiffs' counsel and advised that he intended to execute on the judgments.

On Tuesday, July 6, 2010, Mr. Casaccio and National Indemnity advised the circuit court of their failure to receive notice of the February 22, 2010, order. In addition, Mr. Casaccio and National Indemnity presented to the court a proposed "Order Staying Execution of Judgment," which not only stayed execution of the August 22, 2008, and February 22, 2010, orders, but also vacated and re-entered the February 22, 2010, order. The circuit court entered Mr. Casaccio and National Indemnity's proposed order on July 6, 2010.

Mr. Casaccio and National Indemnity then filed a "Motion for Clarification of Rulings and Entry of Final Order." The motion was heard by the circuit court on October 22, 2010. The circuit court made no ruling at the hearing. Subsequently, on October 29, 2010, the circuit court entered its "Order Clarifying this Court's Prior Orders and Denying Mr. Casaccio and National Indemnity's Objections." This order was prepared by the Plaintiffs' counsel and was not presented to counsel for Mr. Casaccio and National Indemnity. The order purports to make the appeal period for the February 22, 2010, order begin to run on July 2, 2010, the date on which Mr. Casaccio and National Indemnity became aware of the order. The October 29, 2010, order was entered notwithstanding the fact that the February 22, 2010, order had previously been vacated and re-entered on July 6, 2010. The October 29, 2010, order was apparently not mailed to Mr. Casaccio and National Indemnity until November 3, 2010, and was received by them on November 4, 2010. This appeal was filed on November 5, 2010.

## II.

### STANDARD OF REVIEW

It is well established that "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of

discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). Furthermore, to the extent that our review of this case requires us to pass upon the meaning of a trial court rule, we are presented with a question of law, and our review is *de novo*. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With consideration for the foregoing standards, we proceed to address the issues necessary to resolve this appeal.

## III.

## DISCUSSION

██ Mr. Casaccio and National Indemnity have raised numerous issues on appeal. However, this case may be resolved by addressing only two of those issues: (1) whether West Virginia Trial Court Rule 25.10 authorizes a circuit court to impose sanctions on the representative of an insurance company who fails to attend mediation, and (2) whether there was sanctionable conduct in this case. We will address each of these issues in turn.[4]

### A. Trial Court Rule 25.10

The first issue that must be addressed in this appeal is whether Trial Court Rule 25.10 permits a circuit court to impose sanctions on a non-party insurance representative who

has failed to attend court-ordered mediation. Rule 25.10 provides:

The following *persons*, if furnished reasonable notice, are required to appear at the mediation session: (1) each party or the party's representative having full decision-making discretion to examine and resolve issues; (2) each party's counsel of record; and (3) *a representative of the insurance carrier for any insured party*, which representative has full decision-making discretion to examine and resolve issues and make decisions. Any party or representative may be excused by the court or by agreement of the parties and the mediator. If a party or its representative, counsel, or *insurance carrier fails to appear at the mediation session without good cause or appears without decision-making discretion, the court sua sponte or upon motion may impose sanctions*, including an award of reasonable mediator and attorney fees and other costs, against the responsible party.

(Emphasis added).

██ To establish the proper manner in which we analyze the foregoing rule, we note that many appellate courts have recognized, and we now specifically hold, that court rules are interpreted using the same principles and canons of construction that govern the interpretation of statutes. *See State v. Petty*, 225 Ariz. 369, 372, 238 P.3d 637, 640 (Ct.App. 2010) ("In interpreting rules, we apply the same principles we use in interpreting statutes."); *State v. Stites*, 300 S.W.3d 103, 107 (2009) ("We construe court rules using the same means and canons of construction used to interpret statutes."); *Timothy Whelan Law Assocs., Ltd. v. Kruppe*, 409 Ill.App.3d

---

4. A preliminary issue that may be quickly resolved is the timeliness of this appeal. While numerous orders were entered during the course of the proceedings below, we conclude that the circuit court's order of February 22, 2010, represented a final appealable order insofar as it disposed of all the issues pertaining to the sanctions imposed on Mr. Casaccio and National Indemnity. *See* Syl. pt. 3, in part, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."). *Accord* Syl. pt. 2, *C & O Motors, Inc. v. West Virginia*

*Paving, Inc.*, 223 W.Va. 469, 677 S.E.2d 905 (2009). Nevertheless, it is undisputed that, due to an apparent clerical error, Mr. Casaccio and National Indemnity did not receive notice of the circuit court's February 22, 2010, order until July 2, 1010. To remedy this error, on July 6, 2010, the circuit court entered an order expressly stating that the February 22, 2010, order "be deemed for all purposes vacated and reentered as of the date shown on this instant Order." Thus, pursuant to the circuit court's July 6, 2010, order, the appeal period for this action began on July 6, 2010, and the petition for appeal filed on November 5, 2010, by Mr. Casaccio and National Indemnity was timely.

359, 374, 947 N.E.2d 366, 381, 349 Ill.Dec. 729, 744 (2011) ("Court rules are interpreted in the same manner as statutes."); *Heit v. Stansbury*, 199 Md.App. 155, 157, 20 A.3d 834, 835 (2011) ("We interpret the Maryland Rules using the same principles that apply to the interpretation of statutes."); *Ligons v. Crittenton Hosp.*, 490 Mich. 61, 70, 803 N.W.2d 271, 277 (2011) ("We interpret court rules using the same principles that govern the interpretation of statutes."); *Dynamic Computer Solutions, Inc. v. Midwest Mktg. Ins. Agency, L.L.C.*, 91 S.W.3d 708, 713 (Mo. Ct.App.2002) ("Missouri Supreme Court rules are to be interpreted in the same fashion as statutes."); *State v. Montoya*, 149 N.M. 242, 247 P.3d 1127, 1130 (Ct.App.2010) (commenting with respect to interpretation of supreme court rule, "[w]e look to the same rules of construction as if we were interpreting a statute."); *State v. Oglesby*, 384 S.C. 289, 293, 681 S.E.2d 620, 622 (Ct.App.2009) ("When interpreting a court rule, an appellate court applies the same rules of construction used in interpreting statutes."); *Seto v. American Elevator, Inc.*, 159 Wash.2d 767, 772, 154 P.3d 189, 191 (2007) ("Court rules ... are interpreted in the same manner as statutes."); *In re MM*, 202 P.3d 409, 413 (Wyo.2009) ("We interpret court rules applying the same principles used to interpret statutes."). Moreover, "where the language of a rule is clear and unambiguous, it should not be construed but applied according to its terms." Syl. pt. 3, in part, *State v. Mason*, 157 W.Va. 923, 205 S.E.2d 819 (1974).

The plain language of Rule 25.10 instructs that, if furnished reasonable notice, certain *"persons"* must appear at a court-ordered mediation session. (Emphasis added). Among those persons required to appear at a mediation session are "(1) each party or the party's representative having full decision-making discretion to examine and resolve issues; (2) each party's counsel of record; and (3) a representative of the insurance carrier for any insured party, which representative has full *decision-making discretion* to examine and resolve issues and make decisions." Rule 25.10.

The use of the term "persons" to introduce the list of those who may be re-

quired to attend mediation clearly indicates that some individuals whose attendance may be required at mediation will not be parties to the underlying lawsuit. Indeed, those "persons" are subsequently identified as a "party's representative," a "party's counsel," and "a representative of the insurance carrier for any insured party." These phrases demonstrate that the term "party" as used in Rule 25.10 is intended to mean a party in the legal sense, as in a plaintiff or defendant. This usage of the term "party" is further demonstrated by the plain language of the sentence setting out the consequences for the failure of a required person to appear at the mediation without good cause or without the requisite decision-making discretion. This language identifies four distinct individuals whose unauthorized absence may lead to sanctions: "[i]f *a party* or *its representative, counsel,* or *insurance carrier* fails to appear at the mediation session without good cause or appears without decision-making discretion, the court *sua sponte* or upon motion may impose sanctions ... against the responsible *party.*" Rule 25.10 (emphasis added). Notably, while the rule identifies four distinct persons whose unauthorized absence may lead to sanctions, Rule 25.10 permits the court to impose sanctions only against "the responsible *party.*" (Emphasis added). Thus, Rule 25.10, on its face, fails to authorize sanctions against a non-party insurance carrier.

However, a California court faced with a similar rule has concluded that, for the purposes of its mediation rule, an insurer is considered to be a *party* to the mediation. *Campagnone v. Enjoyable Pools & Spas Service & Repairs, Inc.*, 163 Cal.App.4th 566, 77 Cal.Rptr.3d 551 (2008).

The *Campagnone* court acknowledged the important functions that mediation serves in the judicial system as a prelude to its decision of that case. Successful mediation saves substantial time and expense in resolving disputes, allows the parties to achieve a result acceptable to each, avoids prolonged litigation, and preserves court resources that can then be directed to other cases. *Campagnone*, 163 Cal.App.4th at 569, 77 Cal. Rptr.3d at 553. However,

[f]or mediation to be effective, the parties must attend all mediation sessions in person, with full settlement authority. *And when potential insurance coverage may apply, a representative of a party's insurance carrier must attend all mediation sessions in person, with full settlement authority.*

*Id.,* 163 Cal.App.4th at 569, 77 Cal.Rptr.3d at 553 (emphasis added).

The merits of the *Campagnone* case required the court to address a local court rule pertaining to court-ordered mediation of certain cases on appeal. After a jury awarded a multi-million dollar verdict to the plaintiffs in a personal injury action, the defendants, including Enjoyable Pools & Spas Service & Repairs, Inc., appealed. The appellate court ordered appellate mediation. Under a local rule, an excess insurer was required to attend the mediation. The rule stated, in relevant part, that

"All parties and their counsel of record must attend all mediation sessions in person with full settlement authority. If a party is not an individual, then a party representative with full authority to settle all appeals and cross-appeals must attend all mediation sessions in person, in addition to counsel. *If a party has potential insurance coverage applicable to any of the issues in dispute, a representative of each insurance carrier whose policy may apply also must attend all mediation sessions in person, with full settlement authority.* Any exception to this requirement must be approved in writing by the mediator." (Local rule 1(d)(9).).

*Campagnone,* 163 Cal.App.4th at 570, 77 Cal. Rptr.3d at 553. The excess insurer failed to comply with the rule, and the plaintiffs filed a motion for sanctions against, *inter alia,* the excess insurer. The court observed that "[f]ailure to comply with this rule can doom ... mediation, thus undermining the beneficial purposes of the mediation process and wasting the time of all involved in the mediation." *Campagnone,* 163 Cal.App.4th at 570, 77 Cal.Rptr.3d at 553. The court went on to reason that

[a]n appellate court has the authority to impose sanctions to ensure that the purposes of its rules of court are achieved and to discourage the future violations of court rules. (*Bryan v. Bank of America* (2001) 86 Cal.App.4th 185, 194–199, 103 Cal. Rptr.2d 148; Cal. Rules of Court, rule 8.276(a) ["On motion of a party or its own motion, a Court of Appeal may impose sanctions" on "a party or an attorney" for "[c]ommitting [an] unreasonable violation of these rules"] [Appellate Rules of the California Rules of Court (rule 8.1 et seq.) ].)

This authority extends to violations of local rules of an appellate court. (*Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 340, 126 Cal.Rptr.2d 763.) Hence, local rule 1(g) warns that "[m]onetary sanctions may be imposed" for the failure to comply with the Third Appellate District's local rules regarding appellate mediation.

*Campagnone,* 163 Cal.App.4th at 570, 77 Cal. Rptr.3d at 553–54. The *Campagnone* court then concluded that,

[f]or purposes of local rule 1(g), *an insurer is considered a party to the mediation and, thus, may be ordered to pay sanctions for its unauthorized failure to have a representative attend a mediation.* (See *Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1295, 275 Cal.Rptr. 674 ["where ... the insurer provides a defense for a party, the realities of the insurer's role in the litigation dictate that the insurer be treated as an authorized participant in judicial proceedings"]; *American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579, 591–592, 113 Cal.Rptr. 561 ["In the insured-insurer relationship, the attorney characteristically is engaged and paid by the carrier to defend the insured.... Both the insured and the carrier have a common interest in defeating or settling the third party's claim.... In such a situation, the attorney has two clients [the insured and the insurer] whose primary, overlapping and common interest is the speedy and successful resolution of the claim and litigation.... Together, the team occupies one side of the litigating arena"].)

*Id.,* 163 Cal.App.4th at 570–71, 77 Cal. Rptr.3d at 554 (emphasis added). Accord-

ingly, the *Campagnone* court announced that, "[h]enceforth, the failure of an insurer with 'potential insurance coverage,' including an excess insurer, to have a representative attend court-ordered appellate mediation in person, with full settlement authority, will result in it being sanctioned by this court for not complying with local rule 1(d)." *Id.*, 163 Cal.App.4th at 573, 77 Cal.Rptr.3d at 556. Nevertheless, the *Campagnone* court declined to impose sanctions upon the excess insurer because the insurer was not given notice of the court-ordered mediation. In this regard, the court commented that

[a]lthough [the defendant] and its counsel had a duty to notify [the excess insurer] of the court-ordered mediation, we decline to impose sanctions against them for the following reason. Local rule 1(d) does not explicitly assign to a party and its counsel the duty to notify the insurance carrier that appellate mediation has been ordered by the court. While this duty is implicit in the rule, there has (until now) been no published decision leaving no doubt that the duty resides in the party and the party's counsel.

Henceforth, a party on appeal, and the party's counsel, will be sanctioned by this court for their failure to notify insurance carriers with potential insurance coverage that appellate mediation has been ordered and that the carrier must have a representative attend all mediation sessions in person, with full settlement authority.

163 Cal.App.4th at 573–74, 77 Cal.Rptr.3d at 556.

■ In view of the foregoing discussion, we now hold that, for purposes of West Virginia Trial Court Rule 25.10, the insurance carrier for an insured party is considered a party to court-ordered mediation and, thus, may be sanctioned by a trial court for its unauthorized failure to participate in said mediation through the presence of a representative who has full decision-making discretion to examine and resolve issues and make decisions in connection with the mediation.

Having determined that West Virginia Trial Court Rule 25.10 authorized the lower court to impose sanctions on an insurer, we now must consider the particular facts of this case to determine if the sanctions were warranted.

### B. *Factual Basis for Sanctions*

To determine whether there was a factual basis for the circuit court to impose sanctions in this case, we must examine the court's order to ascertain the specific conduct for which sanctions were imposed. In this regard, we observe that the circuit court's order is less than a model of clarity. Furthermore, several of the grounds for imposing sanctions involved the alleged egregiously deceptive conduct of Ms. Knapp and Converium in misleading the Plaintiffs with regard to Ms. Knapp's lack of full decision-making authority to resolve the case. Inexplicably, however, no sanctions were requested or imposed upon Ms. Knapp or Converium.

A careful reading of the circuit court's order in which the sanctions were imposed reveals that three separate grounds were asserted as a basis for sanctions against Mr. Casaccio and National Indemnity: (1) National Indemnity's failure to attend the mediation held on November 10, 2006; (2) National Indemnity's direction to Converium to offer the Plaintiffs $350,000 to settle the case after an earlier offer of $700,000 (made by Ms. Knapp) had been rejected; and (3) National Indemnity's failure to attend the second mediation, which was held on November 27, 2006. We will examine each of these grounds.

■ First, we find that National Indemnity's failure to attend the mediation held on November 10, 2006, was not sanctionable. Pursuant to Rule 25.10, certain designated individuals, which include "a representative of the insurance carrier for any insured party," are required to attend mediation only if "furnished reasonable notice." The uncontroverted evidence in the record of this case indicates that National Indemnity received no notification of the November 10, 2006, mediation. In the absence of reasonable notice, National Indemnity's failure to attend that mediation is not sanctionable.

■ The circuit court's second ground for imposing sanctions under Rule 25.10 was Na-

tional Indemnity's direction to Converium to offer the Plaintiffs $350,000 to settle the case when the offer was made after Ms. Knapp's offer of $700,000 had been rejected.[5] The trial court concluded that the $350,000 offer was made in bad faith. To the contrary, the evidence presented at the sanction hearing was that, at the time National Indemnity representatives suggested that Converium offer a settlement of $350,000, National Indemnity had no knowledge that a prior offer of $700,000 had been made, or that there had been mediation in this case. Furthermore, there is nothing in the record contradicting this evidence. Therefore, the offer was not made in bad faith and does not provide grounds for sanctions.

 The circuit court's final ground for imposing sanctions was Mr. Casaccio's failure to attend the mediation session held on November 27, 2006. As we previously noted, Rule 25.10 requires the presence at mediation of "a representative of the insurance carrier for any insured party" only when such person is "furnished reasonable notice." According to the evidence in this case, the mediator's letter communicating the circuit court's order that National Indemnity attend mediation to be held on Monday, November 27, 2006, was dated November 19, 2006, which was a Sunday. While the letter indicates that it was transmitted via facsimile and U.S. Mail, the body of the letter reflects that the mediator had no contact information for National Indemnity, did not actually know the identity of National Indemnity,[6] and was relying on Ms. Knapp to provide National Indemnity with notice of the circuit court's order. Assuming that National Indemnity received notice of the circuit court's order on Monday, November 20, 2006, once holidays and weekends are excluded,[7] it appears that National Indemnity received three days notice of the mediation.[8] We do not find such notice to be "reasonable." Furthermore, Rule 25.10 allows for the imposition of sanctions only for a failure to attend "without good cause." The evidence in this case demonstrates that Mr. Casaccio attempted to present himself at the November 27, 2006, mediation but was unsuccessful due to a missed flight.[9] In addition, it is undisputed that he participated in the mediation by telephone. When that mediation proved unsuccessful, Mr. Casaccio was present, in person, for mediation on the following day. Considering all of the foregoing factors, we find no grounds for sanctioning Mr. Casaccio or National Indemnity for a failure to attend the November 27, 2006, mediation.[10]

5. The $700,000 offer had been made by Ms. Knapp and rejected by the Plaintiffs during the course of the November 10, 2006, mediation.

6. The letter merely referred to "the insurance carrier represented to be in the process of acquiring Converium Insurance."

7. Thanksgiving Day fell on Thursday, November 23, 2006.

8. Pursuant to Rule 6(a) of the West Virginia Rules of Civil Procedure:

In computing any period of time prescribed or allowed by these rules, by the local rules of any court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is fewer than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in

Rule 77(c), "legal holiday" includes New Year's Day, Martin Luther King's Birthday, Lincoln's Birthday, Washington's Birthday, Memorial Day, West Virginia Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, Christmas Day, any day on which a general, special or primary election is held in the state or in the county in which the circuit court sits, and any other day appointed as a holiday by the Governor or by the President of the United States as a day of special observance or thanksgiving, or a day for the general cessation of business.

9. At the hearing on sanctions, Mr. Casaccio presented evidence to establish that he had purchased the proper airline tickets.

10. In addition to relying on Rule 25.10, the circuit court opined that it had inherent authority to impose sanctions on Mr. Casaccio and National Indemnity. Because we find that the conduct of Mr. Casaccio and National Indemnity did not warrant sanctions, we need not address this issue. Likewise, the manner in which we resolve this case eliminates the need to address the numerous other issues that were raised by Mr. Casaccio and National Indemnity.

166

Having found no sanctionable conduct occurred in this case, we reverse the circuit court's order imposing sanctions upon Mr. Casaccio and National Indemnity.

## IV.

## CONCLUSION

For the reasons set out in the body of this opinion, the order of the Circuit Court of Kanawha County imposing sanctions upon Mr. Joseph Casaccio and National Indemnity Company for violations of West Virginia Trial Court Rule 25.10 is reversed.

Reversed.

Justice McHUGH, deeming himself disqualified, did not participate in the decision of this matter.

Judge ALSOP, sitting by temporary assignment.