IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0114

_____

FILED

**June 14, 2022**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

QUENTON A. SHEFFIELD,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Cabell County
Honorable Christopher D. Chiles, Judge
Criminal Action No. 19-F-107

REVERSED AND REMANDED

_____

Submitted:  May 3, 2022
Filed:  June 14, 2022

Robert F. Evans, Esq.
Public Defender Services
Charleston, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Scott E. Johnson, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE ARMSTEAD dissents and reserves the right to file a dissenting opinion.
JUSTICE WOOTON concurs and reserves the right to file a concurring opinion.

**SYLLABUS BY THE COURT**

1. "The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this jurisdiction[.]" Syl. Pt. 5, in part, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999).

2. "Court rules are interpreted using the same principles and canons of construction that govern the interpretation of statutes." Syl. Pt. 2, *Casaccio v. Curtiss*, 228 W. Va. 156, 718 S.E.2d 506 (2011).

3. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

4. There is a presumption of prejudice to a defendant's right to a fair trial when a discharged alternate juror is recalled and replaces a member of the jury panel who becomes unable or disqualified to perform his or her duties after the jury retires to consider its verdict.

5. The presumption of prejudice that results from the mid-deliberation substitution of a regular juror with a discharged alternate juror can only be overcome when the trial court takes extraordinary precautionary measures to ensure the defendant's right

to a fair trial.  Those measures may include, but are not limited to: (1) re-administering the juror oath to the alternate juror; (2) questioning the alternate juror to confirm that he or she has not been exposed to any improper outside influences; (3) questioning the remaining members of the jury panel to make sure that they can set aside any opinions they formed about the case during their prior deliberations; (4) re-reading the trial court's charge or instructions to the entire jury panel; and (5) instructing the entire jury panel that they must begin their deliberations anew.  Given the substantial potential for prejudice from the mid-deliberation replacement of a juror, the length of deliberations before and after the substitution is a factor to be considered when assessing whether the defendant has been prejudiced.  This Court will consider the totality of the circumstances in determining whether the extraordinary precautions taken by the circuit court successfully rebut the presumption of prejudice.

**HUTCHISON, Chief Justice:**

The petitioner, Quentin A. Sheffield, appeals the January 5, 2021, order of the Circuit Court of Cabell County sentencing him to life in prison without mercy for his conviction of first-degree murder, two to ten years of imprisonment for his conviction of malicious wounding, and five years of imprisonment for his conviction of possession of a firearm by a person prohibited from possessing a firearm.[1] In this appeal, the petitioner contends that the circuit court committed reversible error during his trial when it dismissed a member of the jury after deliberations began and replaced that juror with an alternate who had been discharged from the case. Upon consideration of the parties' briefs and oral arguments, the submitted appendix record, and the relevant authorities, we find merit to the petitioner's argument. Accordingly, for the reasons set forth below, we reverse the petitioner's conviction and sentencing orders and remand this case for a new trial.

## I. Facts and Procedural Background

In April 2019, the petitioner was indicted by a Cabell County grand jury on charges of murder, malicious wounding, and possessing a firearm while being a person prohibited from possessing a firearm. The events giving rise to the charges are not relevant to the issue on appeal. Instead, the facts that are important concern what occurred at trial after the jury retired to begin its deliberations.

---

[1] The circuit court ordered all sentences to be served consecutively.

1

The record reflects that the petitioner's trial commenced on September 29, 2020, and it lasted a total of six days. On the fifth day of trial, the jury retired to begin its deliberations, and the trial court discharged the alternate juror from the case. After the jury had been deliberating for slightly more than an hour, the trial court called a recess because it had been informed that one of the jurors might have had a conversation with a witness while on a lunch break during the middle of the trial. After stopping the deliberations, the trial court proceeded to question each juror individually, and every juror denied speaking to a witness. At that point, the petitioner moved for a mistrial, arguing that because one of the jurors was not being truthful, there was no other remedy. The State opposed the motion and suggested that the trial court review the surveillance footage from the courthouse cameras to determine which juror had talked to the witness. The trial court agreed to look at the surveillance footage, so it ordered the jury to recess for the day. The trial court also instructed the court clerk to contact the alternate juror and ask her to return the following day. The petitioner objected to recalling the alternate juror.

The next day, through the review of the courthouse video surveillance footage, the trial court determined that Juror B.[2] had in fact spoken with one of the trial

---

[2] When referring to specific jurors, we use their last initials rather than their full names. *See State v. Wasanyi*, 241 W. Va. 220, 230 n.12, 821 S.E.2d 1, 11 n.12 (2018) ("We refer to juror number one by an initial rather than her full name because of the personal information disclosed herein.").

witnesses.[3]    The court then questioned Juror B. again, and the following exchange

occurred:

> THE COURT:  My Baliff was able to get a copy of the
> courthouse security video, and it shows you talking with [the
> witness], the owner of Metro Cab, at lunch on Thursday, and
> that was what I was asking about when you said you did not do
> it.
>      I would like to play that for you at this point.
>
> JUROR B.:  Oh, okay.[4]
>
> JUROR B.:  Okay, I did, yeah, I didn't know that-
>
> THE COURT:  You didn't know what?
>
> JUROR B.:  That I wasn't allowed to speak to him.
>
> THE COURT:  No, but I was asking you yesterday whether
> you spoke with any witness who had testified and you said no.
>
> JUROR B.:  I am sorry.  I did not understand that.
>
> THE COURT:  I think because of that I have no choice [sic] to
> excuse you from this jury.

---

[3] When initially questioned, Juror B. was asked by the trial court:

> All right, Ms. [B.], it has recently come to our attention
> that last Thursday at lunchtime during our lunch recess that one
> of the jurors may have had a conversation with a witness who
> had previously testified and maybe even asked that witness a
> couple of questions on the courthouse lawn.  Was that you by
> chance?

Juror B. responded, "No."  The Court then asked, "You are sure?" Juror B. said, "I am
positive."

[4] The video was then viewed by all parties.

After Juror B. was excused, the trial court denied the petitioner's motion for a mistrial and asked the petitioner whether he would prefer to proceed with just eleven jurors or whether he wanted the alternate juror to return to service. Emphasizing that he was not waiving his request for a mistrial, the petitioner stated that he preferred to have twelve jurors.

Thereafter, the trial court informed Juror S., the alternate juror who had returned as requested, that one of the jurors had to be excused due to the juror's conversation with a witness, and that this necessitated Juror S.'s return to service. Juror S. was then asked by the trial court whether she was "okay serving as a juror in this case." She answered affirmatively. The petitioner's counsel asked Juror S. whether she had spoken to anyone about the case after she had been dismissed and left the courthouse the previous day, and she said, "no." The trial court then informed Juror S. that her written notes about the case had been destroyed when she was discharged and asked whether she was still able to be a fair and impartial juror and whether she was able to discuss the case with the other jurors and deliberate without the benefit of her notes. She replied, "yes," and returned to the jury, but the juror's oath was not re-administered to her.

The trial court told the other jurors that Juror B. had been excused because of her conversation with a witness and that Juror S. would be returning for the deliberations. The trial court asked each juror individually if he or she was still able to sit as a fair and

4

impartial juror in the case and render a decision in light of what had happened. Each juror responded affirmatively. The jury was also instructed as follows:

> THE COURT: Thank you, ladies and gentlemen. Again, I thank you for being here today.
>
> As you know, from what I have said to each of you on the record in chambers, one of your fellow jurors has been excused and an alternate juror is replacing that excused juror.
>
> Do not consider this substitution for any purposes. Under the law, the alternate juror must participate fully in the deliberations that lead to any verdict.
>
> The Prosecution and the Defendant has [sic] the right to a verdict reached only after full participation of the jurors whose votes determine that verdict. This right will only be assured if you begin your deliberations again from the beginning.
>
> Therefore, you must set aside and disregard all past deliberations and begin your deliberations all over again. Each of you must disregard the earlier deliberations and decide this case as if those earlier deliberations have not taken place.

The reconstituted jury then began its deliberations and reached a verdict in less than an hour. During that time, deliberations were paused twice while the jury received additional instructions from the trial court. On one occasion, the trial court informed the jury that the court clerk would be bringing them the "[jury] charge, the instructions, everything." The second time, the jury asked the court who two phone numbers belonged to, and the court informed the jury it could not answer that question as the parties and court agreed they were uncertain as to whether the referenced numbers had been admitted as evidence in the case.

5

As indicated above, the jury convicted the petitioner of all charges. The mercy phase of the trial was bifurcated, so after reaching its verdict, the jury reconvened to decide whether to afford the petitioner mercy on his first-degree murder conviction. After the jury denied the petitioner a finding of mercy, he filed a post-trial motion asserting error based on the trial court's decision to impanel the discharged alternate juror and not declare a mistrial. The motion was denied, and the petitioner was sentenced by an order entered on January 5, 2021. This appeal followed.

## II. Standard of Review

The petitioner argues that the trial court committed reversible error by not granting a mistrial when it became necessary to dismiss a member of the jury after deliberations had begun. "The decision to grant or deny a motion for mistrial is reviewed under an abuse of discretion standard." *State v. Lowery*, 222 W. Va. 284, 288, 664 S.E.2d 169, 173 (2008). In this case, our determination of whether the trial court committed reversible error by not granting a mistrial requires us to interpret the West Virginia Rules of Criminal Procedure. "[O]ur review is plenary on the issues before us pertaining to the interpretation of state statutes and court rules." *State v. Davis*, 236 W. Va. 550, 554, 782 S.E.2d 423, 427 (2015); *see also* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the trial court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, we consider the parties' arguments.

6

# III. Discussion

The sole issue in this appeal is whether the trial court committed reversible error when it replaced a member of the jury during deliberations with the alternate juror who had been discharged from service. The petitioner argues that the mid-deliberation juror substitution was a violation of Rule 24(c) of the West Virginia Rules of Criminal Procedure. The rule provides, in pertinent part:

> *Alternate jurors.* - The court may direct that more jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. *Alternate jurors* in the order in which they are called *shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties*. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities and privileges as the regular jurors. *An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.*

W. Va. R. Crim. P. 24(c) (emphasis added). The petitioner contends that the clear and unambiguous language of this rule does not allow the substitution of a member of the jury with an alternate after the jury begins deliberations because the alternate jurors have been discharged. We agree.

"The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the trial courts of this jurisdiction[.]" Syl. Pt. 5, in part, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999). With regard to trial jurors, this Court has previously recognized that "Rule 24(c) states that the alternate shall be

7

discharged after the jury retires to consider its verdict." *State v. Lightner*, 205 W. Va. 657, 662, 520 S.E.2d 654, 659 (1999). *In Lightner*, the trial judge failed to release the alternate juror when the jury retired, and as a result, the alternate participated in the jury deliberations and voted on the verdict finding the defendant guilty. On appeal, the defendant argued that the trial court had violated Rule 24(c) and that the error required automatic reversal of his conviction. Upon review, this Court promptly acknowledged that allowing an alternate juror to deliberate with the jury panel was clear error under Rule 24(c). *Lightner*, 205 W. Va. at 662, 520 S.E.2d at 659.

In the case at bar, the trial court discharged the alternate juror after the jury retired to consider its verdict as required by Rule 24(c), but then recalled the alternate after deliberations began to replace the jury member found to be disqualified from performing her duties because of her conversation with a trial witness. Rule 24(c) provides that "[a]lternate jurors . . . shall replace jurors who, *prior to the time the jury retires to consider its verdict,* become or are found to be unable or disqualified to perform their duties" and that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." (Emphasis added). We have held that "[c]ourt rules are interpreted using the same principles and canons of construction that govern the interpretation of statutes." Syl. Pt. 2, *Casaccio v. Curtiss*, 228 W. Va. 156, 718 S.E.2d 506 (2011). Our canons of construction provide that "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970).

8

Rule 24(c) plainly and unambiguously provides that any replacement of a regular juror by an alternate juror must occur before the jury retires to begins its deliberations.

Like other jurisdictions with the same rule, we decline to infer that the provision authorizing pre-submission substitution of jurors also allows for post-submission substitution. *See State v. Sanchez*, 6 P.3d 486, 492 (N.M. 2000) ("Like federal courts, state courts have generally refused to imply from [provisions allowing alternate jurors to take the place of original jurors who become incapacitated] the authority to make postsubmission substitution." (quotations and citation omitted)). Under our canons of construction, "[i]t is not for this Court arbitrarily to read into [the rule], that which it does not say." *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996). Given the absence of any language in Rule 24(c) allowing the substitution of a juror after the jury has retired, we find no authority for a trial court to do so. Consequently, the trial court's replacement of the disqualified jury member after deliberations began with the alternate juror who had been discharged from the case was a clear violation of Rule 24(c).

Having found that the trial court's post-submission juror substitution violated Rule 24(c), we must now determine the legal effect of that error upon the verdict. The petitioner argues the trial court's violation of Rule 24(c) requires the automatic reversal of his conviction. Conversely, the State argues that the error was harmless, and the petitioner's convictions should be affirmed.

9

In *Lightner,* the defendant also urged this Court to adopt a reversible *per se* rule for the violation of Rule 24(c) in that case. This Court rejected the defendant's argument in that case, explaining:

> We are not convinced that the trial court's failure to promptly discharge an alternate juror is so serious that it should, in every situation, require automatic reversal. Each case must be decided on its own unique set of facts.

*Id.* at 660, 520 S.E.2d at 657.[5] We find the same to be true when a discharged alternate juror is recalled and replaces a member of the jury who becomes disqualified during deliberations.

Most jurisdictions that have considered a mid-deliberation substitution of a juror with a discharged alternate have determined the legal effect of that error on the verdict by utilizing either an expansive harmless error analysis or what has been termed the "presumption of prejudice" doctrine. *State v. Sanchez,* 6 P3d. 486, 493 (N.M. 2000). Simply stated, "[i]f a post-submission substitution has been found to be erroneous, the bulk of courts next focus on the extent to which the error is prejudicial." *Commonwealth v. Saunders*, 686 A.2d 25, 28 (Pa. Super. Ct. 1996). Federal courts addressing the issue have tended to use the harmless error analysis which places the burden of showing prejudice on

---

[5] In *Lighter*, this Court proceeded to conduct a plain error analysis because the defendant had not objected during the proceedings below to the alternate juror's participation in the deliberations. *Id.* at 661, 520 S.E.2d at 658.

the defendant.[6]  *Id.*  In contrast, state courts have generally applied the presumption of prejudice doctrine which shifts the burden to the State.  *Id.*

In adopting the presumption of prejudice approach, the Supreme Court of Colorado explained that "because a just verdict cannot be reached if there is an inappropriate interference with or intrusion upon the deliberative process . . . the mid-deliberation replacement of a regular juror with an alternate must be presumed to have prejudiced the defendant."  *People v. Burnette,* 775 P.2d 583, 590 (Colo. 1989) (citation omitted).  Elaborating further, the *Burnette* court observed that

> [t]he potential for prejudice occasioned by a deviation from the mandatory requirements of [Rule] 24[] is great. Where an alternate juror is inserted into a deliberative process in which some jurors may have formed opinions regarding the defendant's guilt or innocence, there is a real danger that the new juror will not have a realistic opportunity to express his views and to persuade others. Moreover, the new juror will not have been part of the dynamics of the prior deliberations, including the interplay of influences among and between jurors, that advanced the other jurors along their paths to a decision.

*Burnette*, 775 P.2d at 588 (citations omitted).  Indeed, "[t]he environment of the reconstituted jury would be inherently coercive for the alternate juror because the other jurors had already determined their views of the case."  *People v. Roberts*, 824 N.E.2d 250,

---

[6] Prior to 1999, Rule 24(c) of the Federal Rules of Criminal Procedure also provided that alternate jurors who had not replaced a regular juror were to be discharged when the jury retired to deliberate.  The language of the rule mirrored our Rule 24.  In 1999, the federal rule was amended, and now federal trial courts have discretion to retain alternate jurors after the jury retires to deliberate and to replace a member of the jury panel with an alternate during deliberations.  *See* Fed. R. Crim. Proc. 24 (2002).

261 (Ill. 2005); *see also U.S. v. Quiroz-Cortez*, 960 F.2d 418, 420 (5th Cir. 1992) (recognizing "a danger that the other jurors will have already formulated positions or viewpoints or opinions in the absence of the alternate juror and then pressure the newcomer into passively ratifying this predetermined verdict, thus denying the defendant the right to consideration of the case by twelve jurors").

Also employing the presumption of prejudice approach, the Superior Court of Pennsylvania reasoned:

> The Rules of Criminal Procedure "are intended to provide for the just determination of every criminal proceeding." Pa.R.Crim.P. 2. Accordingly, when the trial court proceeds in blatant violation of the Rules, without the defendant's consent, the trial court does so at its own risk. Clearly, our Supreme Court adopted Rule 1108(a)[7] in order to protect both the Commonwealth and the defendant against the perils of post-submission substitution . . . we cannot turn a blind eye to the genuine risk of a tainted verdict. Quite simply, we must [e]nsure that the jury function remains protected.

*Saunders,* 686 A.2d at 28 (footnote added). Like these courts, we are persuaded that "requiring prejudice to be presumed from a violation of [Rule 24(c)] . . . best accommodates the fundamental concern of protecting the deliberative process of the jury." *Burnette*, 775 P.2d at 590. Accordingly, we now hold that there is a presumption of prejudice to a defendant's right to a fair trial when a discharged alternate juror is recalled and replaces a

---

[7] Rule 1108(a) of the Pennsylvania Rules of Criminal Procedure mirrors our Rule 24(c). *See Saunders*, 696 A.2d at 27.

12

member of the jury who becomes unable or disqualified to perform his or her duties after the jury retires to consider its verdict.

Under the presumption of prejudice doctrine, there is a recognition that "the factual circumstances in which an unauthorized substitution of an alternate juror during deliberations may occur are manifold and that under certain circumstances the presumption of prejudice that flows from a juror substitution during the course of jury deliberations may be rebutted." *Burnette* 775 P.2d at 591. As one court explained,

> it is not always *reversible* error to recall an alternate who has been discharged. Suppose the alternate in this case had been recalled as she was leaving the courtroom 30 seconds after having been discharged. It would violate Rule 24(c) to put her back on the jury but there would be no prejudice to the defendants that would warrant reversal of their convictions . . . only prejudicial violations of the rule are reversible errors.

*U.S. v. Josefik*, 753 F.2d 585, 587 (7th Cir. 1985). Although state and federal courts have taken different approaches to assess the effect of a mid-deliberation juror substitution, it is generally agreed that prejudice "is not shown when the facts surrounding the replacement of an alternate juror [indicate] . . . that the handling of the reconstituted jury was adequate to ensure a fair and impartial jury." *Sanchez*, 6 P.3d at 494. Regardless of the approach used to evaluate the error though, "post-submission substitution is an exception to a rule of criminal procedure, which protects constitutional rights." *Id.* at 495. Therefore, "both approaches require adequate procedural safeguards; absent such precautions at the trial court level, the text of the rule supports reversal." *Id.*

13

Evaluating whether the post-submission juror substitution was prejudicial requires an examination of the record and a consideration of what precautionary measures were used by the trial court to preserve the defendant's right to a fair trial. Other state courts have held that the presumption of prejudice can only be rebutted by "a showing that the trial court took extraordinary precautions to ensure that the defendant would not be prejudiced and that under the circumstances of the case, the precautions were adequate to achieve that result." *Burnette*, 775 P.2d at 590. In other words, the record must establish that "sufficient protective measures were taken to [e]nsure the integrity of the jury function." *Saunders*, 686 A.2d at 28.

Federal courts have "evaluate[d] prejudice to the defendant by examining, among other things, the length of the jury's deliberations before and after substitution of the alternate and the district court's instructions to the jury upon substitution charging the jury to begin its deliberations anew." *Quiroz-Cortez*, 960 F.2d at 420. Also highly relevant is the alternate juror's possible exposure to outside influences during the time he or she was absent from the courtroom. *Id.* These same factors have also been applied by state courts to evaluate the presumed prejudice. For example, in *Roberts*, the Supreme Court of Illinois indicated that

> [i]n determining whether a defendant was prejudiced,
> we will consider the totality of the circumstances, including:
> (1) whether the alternate juror and the remaining original jurors
> were exposed to outside prejudicial influences about the case;
> (2) whether the original jurors had formed opinions about the
> case in the absence of the alternate juror; (3) whether the
> reconstituted jury was instructed to begin deliberations anew;

14

(4) whether there is any indication that the jury failed to follow the court's instructions; and (5) the length of deliberations both before and after the substitution.

*Id.* at 260. Similarly, the *Saunders* court declared that the

solution begins with the trial court, prior to impaneling the alternate juror, extensively questioning the alternate and remaining jurors. The trial court must [e]nsure that alternate has not been exposed to any improper outside influences and that the remaining regular jurors are able to begin their deliberations anew. These are fundamental consideration that can not be ignored.

*Id.* at 29. That court, like all others, emphasized the importance of the instructions to the recomposed jury, finding it critical to that they be directed to begin their deliberations anew. *See id.*

Based on the above, we now hold that the presumption of prejudice that results from the mid-deliberation substitution of a regular juror with a discharged alternate juror can only be overcome when the trial court takes extraordinary precautionary measures to ensure the defendant's right to a fair trial. Those measures may include, but are not limited to: (1) re-administering the juror oath to the alternate juror; (2) questioning the alternate juror to confirm that he or she has not been exposed to any improper outside influences; (3) questioning the remaining members of the jury panel to make sure that they can set aside any opinions they formed about the case during their prior deliberations; (4) re-reading the trial court's charge or instructions to the entire jury panel; and (5) instructing the entire jury panel that they must begin their deliberations anew. Given the substantial potential for prejudice from the mid-deliberation replacement of a juror, the length of

15

deliberations before and after the substitution is a factor to be considered when assessing whether the defendant has been prejudiced. This Court will consider the totality of the circumstances in determining whether the extraordinary precautions taken by the circuit court successfully rebut the presumption of prejudice.

Applying our holding to the facts of this case, we find that the presumption of prejudice has not been successfully rebutted. While the trial court took significant steps after Juror B. was excused, the totality of the circumstances does not indicate that extraordinary precautions were taken to ensure that the petitioner received a fair trial. In that regard, the record shows that Juror S. was recalled to service without the juror's oath being re-administered. The "juror's oath places . . . the responsibility of arriving at a true verdict upon the basis of [the juror's] own opinion and not merely upon acquiescence in the conclusions of [his or her] fellow jurors." *State v. Waldron*, 218 W. Va. 450, 460, 624 S.E.2d 887, 897 (2005). As such, re-administering the juror oath under these circumstances serves as an important reminder to the alternate juror that he or she must fully participate in the deliberations rather than accepting the views the other jury members may have formed during their prior deliberations.

The record also shows that the alternate juror was not thoroughly questioned to determine whether she had been exposed to any outside influences after she was discharged from the case. She was simply asked by defense counsel whether she had spoken to anyone about the case, including her family, and she answered negatively. Given

16

that extensive media coverage often accompanies murder trials such as this one and that the alternate juror was absent from the proceedings for almost a day,[8] we find that the questioning of the alternate juror was insufficient to establish that she had not been subjected to any impermissible influence.[9]

We also find that the questioning of the remaining jurors regarding their ability to start deliberations from the beginning fell short. Although the critical instruction to begin deliberations anew was given to the reconstituted jury panel, the jurors were never asked individually about their ability to set aside any opinions they had formed prior to the dismissal of Juror B. The fact that the reconstituted jury panel reached a verdict in less than hour—significantly less time than the original jury panel deliberated before the court called for a recess—causes us to question whether the trial court's instructions were followed.

---

[8] The record shows that when the alternate juror was discharged, she was merely thanked for her service and was not given any further instruction.

[9] We note that it is not the duty of defense counsel to question the alternate juror or any remaining members of the jury panel to ensure that the defendant has not been prejudiced by the substitution. Instead, it is the trial court that must take extraordinary precautions to preserve the defendant's right to a fair trial when it chooses to disregard the mandates of Rule 24(c). As such, the fact that defense counsel in this case only asked the alternate juror if she had spoken to anyone about the case cannot be construed as a waiver of the petitioner's right to assert error based on the violation of Rule 24(c). Furthermore, defense counsel objected to the juror substitution as soon as the trial court announced its intention to recall the discharged alternate juror and continued to renew that objection throughout the proceedings that occurred until the reconstituted jury panel began its deliberations.

17

Finally, we are troubled by the fact that the remaining members of the jury panel were never asked what information, if any, was relayed to them by Juror B. about her conversation with the trial witness.[10] The failure of the trial court to explore this possible outside influence on the jury's consideration of the case either through the questioning of Juror B. or the other jury members cannot be overlooked. Having thoroughly considered the totality of the circumstances, we find that the presumption of prejudice has not been overcome and that the trial court abused its discretion when it denied the petitioner's motion for a mistrial.[11] Accordingly, we must reverse the petitioner's conviction and sentencing orders and remand this case for further proceedings.

## IV. Conclusion

For the foregoing reasons, the petitioner's conviction and sentencing orders are reversed, and this case is remanded for a new trial.

Reversed and remanded.

---

[10] The record does show that defense counsel asked one juror, out of the presence of the others, whether he talked with Juror B. about her conversation with the witness and he replied that he did not know about it. None of the other jurors, however, were asked this question.

[11] We recognize that an amendment to Rule 24(c) is the best way to provide trial courts with options when faced with the situation of a member of a jury panel becoming unable or disqualified to continue his or her duties after the jury retires to deliberate. However, such a change cannot be made in the context of a judicial opinion; rather, it must occur through our normal rule-making process.